Ellsworth **BROWN** et al., Appellees,

v.

**UNITED STATES** of America et al., Appellants.

Ellsworth **BROWN** et al., Appellees,

v.

**UNITED STATES** of America et al., Appellees,

Cheyenne River Sioux Tribal Council; Wayne Ducheneaux, a Member of the Cheyenne River Sioux Tribal Council, Appellant.

Nos. 73–1011, 73–1111.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1973.

Decided Oct. 9, 1973.

5. 50 U.S.C. App. § 456(h)(2).

Charles Poches, Jr., Fort Pierre, S. D., for appellants.

John A. Morrissey, South Dakota Legal Services, Eagle Butte, S. D., for appellees.

Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

This class action was brought by six enrolled members of the Cheyenne River Sioux Tribe against the Tribal Council, its Chairman, the United States Government, and the Secretary of Interior. The plaintiffs complained that the Tribal Council was malapportioned and that they, and those they sought to represent, were under-represented on the Council. They sought declaratory and injunctive relief on the theory that the malapportionment violated the one-man, one-vote principle and, thus, denied them equal protection of the laws as guaranteed by the Indian Civil Rights Act, 25 U.S.C. § 1302(8).

The Tribal Council is the governing body of the Tribe. It is comprised of three members elected at-large—the tribal chairman, the secretary, and the treasurer—and fifteen councilmen elected from prescribed districts. At the time the suit was commenced, the fifteen councilmen were from thirteen districts. The Council is charged with supervision of elections, and Article III, Sec. 3 of the Tribe's Constitution provides in part:

> "That the Council shall have the power to both redistrict the reservation and its precincts and to reassign the number of councilmen to be elected from each district in proportion to the number of qualified voters residing therein, or on a population basis."

The Council had failed to reapportion itself after repeated requests by the plaintiffs; and finally after being denied relief by the tribal court, this action was brought in the District Court.

On September 1, 1972, the District Court granted a temporary restraining order enjoining the Council from conducting the Tribal Council election scheduled for September 5, 1972. A hearing on the plaintiffs' motion for a preliminary injunction was held on October 2, 1972. On October 26, 1972, the District Court: (1) preliminarily enjoined the Tribal Council from holding an election until further order of the District Court or until an acceptable apportionment plan was submitted; (2) gave the Tribal Council until December 1, 1972, to submit a plan; and (3) authorized councilmen whose terms had expired to hold office pending submission of the requested plan. No plan was submitted by the Council; and on December 13, 1972, an amendment to the October 26, 1972, order was filed by the District Court. It provided that the councilmen continued in office beyond their expired term be restrained from further action as councilmen until they were reelected under a suitable apportionment plan. A trial was held by the District Court on January 4, 1973. The District Court observed that the number of eligible voters per councilman varied by as much as eight hundred percent under the then existing apportionment plan and found that the Council was malapportioned. It ordered that three apportionment plans be submitted to the District Court by January 9, and that these plans be submitted to a general meeting of the Tribe for agreement on a single plan by January 12, 1973.

The plans were submitted and those present at the tribal meeting indicated a preference for "Plan Number 2." The District Court found that the plan complied with the one-man, one-vote principle. In an order filed on January 15, 1973, the District Court ordered that an election under the plan be held on February 16, 1973. It declared that all seats on the Council were to be vacated on February 15, 1973. It further stated that the plan would be only in effect for the ordered election and that the new Council could develop a new plan on its own so long as it was consistent with the one-man, one-vote principle.

The approved plan is based on "eligible voters" and is derived from the Tribe's "1972 Eligible Voter List" of 1,448 names. The plan divides the reservation

into one single-member district and six multi-member districts. Fifteen councilmen are to be elected from the districts. Given the numbers of eligible voters and councilmen, ideally apportioned districts would each have ninety-seven eligible voters per councilman. Under the plan, no district deviates from this ideal by more than thirteen percent.[1]

The appellant, a member of the Council prior to its reapportionment, filed a motion in the District Court to stay execution of its January 15 order. The District Court denied the appellant's motion. The appellant appealed to this Court; and pending consideration of the appeal, again moved for a stay of the District Court's order of January 15, 1973. That motion was denied; the election was held as scheduled; a new Tribal Council was installed; and the appeal is now before us.

 The appellant's primary contentions on appeal are that the District Court:

(1) was without jurisdiction in this dispute between the Tribe and its members;

(2) erred by allowing the Tribal Council to be sued despite its sovereign immunity;

(3) erred by allowing the plaintiffs to bring this suit without first exhausting their tribal remedies; and

(4) approved an invalid apportionment plan in that it was derived by considering the number of eligible voters rather than the population of the Tribe.[2]

 The questions of jurisdiction and sovereign immunity are identical to those raised in Mary Daly et al. v. Crow Creek Sioux Tribe et al., 483 F.2d 700, at 704–705 (8th Cir. 1973). We there held that federal courts had jurisdiction of this type of action, and that the defense of sovereign immunity was not available to a Tribal Council in this type of action. The exhaustion question is also simply answered. The plaintiffs sought relief in the Tribal Court and were denied an effective timely remedy.

 The question as to the validity of the plan approved by the District Court requires closer scrutiny. The Tribe's Constitution provides that appor-

1. The approved plan provides:

| DISTRICT NUMBER | NUMBER OF ELIGIBLE VOTERS | NUMBER OF COUNCILMEN | NUMBER OF ELIGIBLE VOTERS PER COUNCILMAN |
|---|---|---|---|
| 1 | 183 | 2 | ·92 |
| 2 | 107 | 1 | 107 |
| 3 | 181 | 2 | 91 |
| 4 | 173 | 2 | 87 |
| 5 | 440 | 4 | 110 |
| 6 | 185 | 2 | 93 |
| 7 | 179 | 2 | 90 |

2. The appellant also contends that the District Court erred: (1) in allowing substitution of counsel for the Tribal Council midway through the proceedings, thereby depriving the appellant—an incumbent councilman—of representation at and notice of all subsequent proceedings; and (2) by holding further hearings and entering orders subsequent to the filing of a Notice of Appeal by the Tribe's counsel from the District Court's grant of a preliminary injunction.

We disagree. The Tribe's Constitution permitted the Tribal Chairman to substitute counsel. Representation of a tribe by an attorney who does not have a contract with the Tribe that had been approved by the Secretary of the Interior is not prohibited by 25 U.S.C. § 81. We read the statute as only governing the right to be compensated from tribal funds. Moreover, substituted counsel fairly represented the Council in the District Court, and made reasonable efforts to notify the appellant and others of all proceedings. Finally, the District Court was correct in proceeding despite the Notice of Appeal because the Council had requested that the appeal be withdrawn, and the appellant took no steps to protect his individual right to appeal.

tionment may be based on either "population" or "qualified voters." [3] Use of either basis is permissible under the Supreme Court's decision in Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966). [4] The approved plan, however, does not appear from the record to have been based on either. Statements made at oral argument indicate that the basis used, the "1972 Eligible Voter List," did not account for *all* those who were eligible or qualified to vote. Moreover, the record does not disclose that the use of the "1972 Eligible Voter List" would bring about an apportionment substantially approximating that which would result from the use of "population" or "qualified voters" as a basis for apportionment. See, Burns v. Richardson, *supra.* [5]

Under these circumstances, we have no alternative but to remand this matter to the District Court with instructions to it to first determine if the "1972 Eligible Voter List" substantially includes all those qualified to vote or within the "voter population." See, n. 4, *supra.* If it does, the apportionment plan may continue without further interruption. If it does not, the District Court is to retain jurisdiction and to instruct the Tribal Council to adopt an apportionment plan based on either the Tribe's "citizen population" or its "voter population." *Id.* [6] In such event, the District Court should require the plan to be submitted

---

3. Neither term is specifically defined by the Tribe's Constitution, but "population" seems to refer to all those who are enrolled members of the Tribe who live on the reservation irrespective of their eligibility to vote. "Qualified voters," on the other hand, would seem to include only those Tribe members who are twenty-one years of age or over, and have maintained legal residence on the reservation for at least one year prior to the election. See, "Cheyenne River Sioux Tribe Constitution," Art. V, § 1.

4. In Burns v. Richardson, 384 U.S. 73, 91, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966), the Court indicated that there are at least three permissible bases for apportionment—(1) "total population;" (2) "citizen population;" and (3) "voter population." The Court did not define any of the three, but appropriate definitions are as follows : (1) "total population" refers to all persons living within a prescribed area ; (2) "citizen population" refers to all those within the area who are citizens of the area—this is simply referred to as "population" by the Tribe's Constitution ; (3) "voter population" refers to all those within the prescribed area who would be entitled to vote in elections and is the same as "qualified voters" in the instant case. This group would include those who have not complied with such requirements as registration, but could vote if they were to fulfill such requirements.

5. The Court, in *Burns*, approved a temporary reapportionment plan for the State of Hawaii which was based on "registered voters." It approved the plan only because the record clearly showed that the use of this basis resulted in an apportionment plan which was not substantially different from that which would have resulted if a permissible basis, state citizen population, had been used. *Id.* at 96, 86 S.Ct. 1286.

6. This Court stated in Mary Daly et al. v. Crow Creek Sioux Tribe et al., 483 F.2d 700 at 706 (8th Cir. 1973), that "[t]he apportionment plan must be based on the population of the Tribe and not solely those eligible to vote." See also, Melvin White Eagle, etc., et al. v. Philomene One Feather et al., 478 F.2d 1311, at 1315 (8th Cir. 1973). This case, however, differs significantly from *Mary Daly* in that the Constitution of the Crow Creek Sioux Tribe did not specify a basis for apportionment while bases are specified in the Cheyenne River Sioux Tribe's Constitution. Absent such guidance, the Court in *Mary Daly* was bound to utilize that basis which would best achieve equal protection of the laws for the Tribe members. The Tribal Councils are responsible for governing all members of their Tribes and not just those eligible to vote. Moreover, the apportionment of an Indian Tribal Council usually involves relatively small numbers ; and in order to avoid magnifying errors, it seems advisable to use the largest representative basis available. In view of these facts, we are convinced that the preferable basis for apportionment is the population of the Tribe, and it was proper for the Court in *Mary Daly* to require its use. However, where the Tribe's Constitution specifies other bases which are permissible under the Burns v. Richardson, *supra,* decision, we are without the power to declare that the bases may not be used. However, we do have the authority to insure that the basis used does, in fact, comply with Burns v. Richardson, *supra.*

to it in sufficient time to give it an opportunity to review and approve the plan before the September, 1974, tribal election.[7]

Pending the District Court's review, the presently-elected Council members shall remain in office. See, Mary Daly, et al. v. Crow Creek Sioux Tribe, et al., *supra*. If it is found that a new plan needs to be adopted, elections for all the Council positions are to be held in September of 1974.

Each party to this appeal is to be responsible for its own costs.

Remanded to the District Court for action consistent with this opinion.

7. We contemplate that the Bureau of Indian Affairs will cooperate in preparing the statistical data required on remand, and that the appellant and other members of the Tribe will be given an opportunity to comment on the data and plans submitted by the Tribal Council, and submit data and a plan to the District Court if they desire to do so.