**Russell MEANS et al., Appellants.,**

v.

**Dick WILSON et al., Appellees.**

**No. 74–1841.**

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1975.

Decided Aug. 5, 1975.

Steven J. Trecker, Sausalito, Cal., for appellants.

Dennis H. Hill, Rapid City, for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from the dismissal of a complaint which grew out of an Indian election dispute in the District of South Dakota. The facts are set out fully in the district court opinion. *Means v. Wilson*, 383 F.Supp. 378 (D.S.D.1974). Appellants, who were plaintiffs below, are Russell Means, an unsuccessful candidate for president of the Oglala Sioux Tribal Council in the February, 1974 election, and a group of his political supporters. They are all enrolled members of the Oglala Sioux Tribe residing on the Pine Ridge Indian Reservation in South Dakota. The appellees are Richard "Dick" Wilson, who was elected president of the Council in the aforementioned election, a number of tribe members who supported him, the Tribal Council and certain members thereof and the Tribal Election Board. Some of the appellants are sued individually and in their capacities as officials of the Tribe. They are also enrolled Oglala Sioux, residents of Pine Ridge Reservation.[1]

The action was brought under 28 U.S.C. § 1343,[2] the Indian Civil Rights

---

1. The original complaint named as additional defendants the U.S. Department of the Interior, the Bureau of Indian Affairs, the Commissioner of Indian Affairs and the Department of Justice. These defendants were deleted from the amended complaint, although plaintiffs allege participation by federal officers and agencies in the conspiracy which is the basis of their action.

2. 28 U.S.C. § 1343 provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in

Act (25 U.S.C. §§ 1301–1303) and 42 U.S.C. §§ 1985(3), 1986 and 1988. The district court found that there was no jurisdiction given by either 42 U.S.C. § 1985 or 25 U.S.C. § 1302, but rested its decision on the section 1302 claim on the determination that no claim was alleged under that section. We agree with the court below except in certain respects mentioned herein, and affirm in part and reverse in part.

## I. Exhaustion of Tribal Remedies.

■ Although the trial court did not rely on its conclusion that the Means supporters failed to exhaust tribal remedies in dismissing their complaint, it found that there was such a failure and that this also would have barred plaintiffs from maintaining an action under 25 U.S.C. § 1302 for lack of jurisdiction. We express no view of whether exhaustion of tribal remedies is a prerequisite to federal relief under the Indian Civil Rights Act or 42 U.S.C. § 1985(3) in this particular case, because we find that the plaintiffs made every reasonable attempt to exhaust their tribal remedies.

Plaintiffs originally filed suit on February 11, 1974. On February 19, 1974, plaintiffs moved for a continuance in order to allow them to pursue a formal election contest filed on February 15 in accordance with Tribal Ordinance 85G. Section 12 of the ordinance provides that election contests shall be filed with the election board within three days of certi-

fication of the election. The election was certified on February 13, 1974, and one of the plaintiffs, on behalf of Means and all other tribe members, filed a formal contest with a member of the election board at 8:00 p. m. on February 15. The election board is required to act on the contest and make recommendations thereon to the Tribal Council within five days after the contest is filed. Apparently the board denied relief on February 20, 1974. Within five days after the election board has made its determination, Ordinance 85G requires the Tribal Council to render a decision on the contest. The ordinance provides that: "The decision of the Council on a contest shall be final." However, the Council did not issue a decision on the plaintiffs' election contest within five days and has still not ruled on the contest. Plaintiffs waited for a final decision on the contest until March 29, 1974, before filing their amended complaint, over a month after the Tribal Council, headed by defendant Wilson, had failed to meet the five day deadline imposed by Tribal Ordinance 85G. We find that plaintiffs have done all they could to exhaust tribal remedies in this case, but their tribal right to appeal the election has been frustrated by inaction of the Tribal Council. "The plaintiffs sought relief [through tribal channels] and were denied an effective timely remedy." *Brown v. United States*, 486 F.2d 658, 661 (8th Cir. 1973).

## II. 42 U.S.C. § 1985(3).[3]

furtherance of any conspiracy mentioned in section 1985 of Title 42;

. . . . .

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.
Section 1343(4) gives the courts jurisdiction to redress violations of the substantive rights set forth in the Indian Bill of Rights, 25 U.S.C. § 1301 *et seq. Luxon v. Rosebud Sioux Tribe*, 455 F.2d 698, 700 (1972).
Since a violation of substantive law is a condition precedent to assumption of jurisdiction under section 1343(1) or (4), for the sake of brevity we will refer to the issue of whether there is jurisdiction under 42 U.S.C. § 1985(3) or 25 U.S.C. § 1302, even though 28 U.S.C.

§ 1343 is the statute which actually gives the court jurisdiction to redress violations of the substantive statutes named.

**3.** 42 U.S.C. § 1985(3)
*Depriving persons of rights or privileges*
(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more

In considering the Means faction's section 1985(3) claim, the district court first held that that section did not affect the Oglala Sioux Tribe's historic immunity from suit. With this we agree. *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe*, 370 F.2d 529, 531–532 (8th Cir. 1967); *Native American Church v. Navajo Tribal Council*, 272 F.2d 131, 134–135 (10th Cir. 1959). But the district court erred in concluding that this same reasoning applied to suits against individual Indians. Tribal immunity is based on the sovereignty of the tribe, *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832), and does not protect a tribal subject from suit. *Seneca Constitutional Rights Organization v. George*, 348 F.Supp. 48, 49 (W.D.N.Y.1972). Therefore we must look further than the tribal immunity doctrine to determine whether there is jurisdiction over individual defendants under 42 U.S.C. § 1985(3) and 28 U.S.C. § 1343(4).

. In *Griffin v. Breckenridge*, 403 U.S. 88, 101–102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Court held that 42 U.S.C. § 1985(3) provided a cause of action against private conspiracies, i. e. those not involving state action, to deprive citizens of equal protection of the law or of equal privileges and immunities. In each section 1985 case it must be determined whether there is a constitutional source of congressional power to reach the private conspiracy alleged in the complaint. *Griffin v. Breckenridge, supra*, 403 U.S. at 104, 91 S.Ct. 1790; *Action v. Gannon*, 450 F.2d 1227, 1233 (8th Cir. 1971). In *Griffin* the Supreme Court identified two such sources of congressional power; the thirteenth amendment and the right of interstate travel. *Supra*, 403 U.S. at 105–106, 91 S.Ct. 1790. This latter right was characterized as one of the rights of national citizenship which Congress has the power to protect by appropriate legislation. *Supra*, 403 U.S. at 106, 91 S.Ct. 1790. In this context several cases were cited as exemplary of other "rights of national citizenship;" among them were *United States v. Classic*, 313 U.S. 299, 314–315, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) and *Ex Parte Yarbrough*, 110 U.S. 651, 658–662, 4 S.Ct. 152, 28 L.Ed. 274 (1884). *Classic* and *Yarbrough* were both prosecutions under criminal statutes analogous to 42 U.S.C. § 1985(3), based on alleged interference with voting rights in *national* elections. It is thus apparent that the right to vote in federal elections is a right of national citizenship protected from conspiratorial interference by 42 U.S.C. § 1985(3). *Griffin v. Breckenridge, supra*, 403 U.S. at 106, 91 S.Ct. 1790. The Sixth Circuit has held, and we agree, that the right to cast a ballot in a state election is also protected from interference from private conspiracies by the federal Constitution. *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973); see also *Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Smith v. Cherry*, 489 F.2d 1098, 1100–1101 (7th Cir. 1973).

The right to vote is fundamental to representative government. As a right of national citizenship, it is a source of constitutional power, and Congress has the power to guarantee that right by statute. *Griffin v. Breckenridge, supra*, 403 U.S. at 106, 91 S.Ct. 1790. We have previously held that Congress has guaranteed the right to

persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

vote in tribal elections against interference from Indian tribes by enactment of the Indian Civil Rights Act, 25 U.S.C. § 1301 *et seq. Brown v. United States,* 486 F.2d 658, 661 (8th Cir. 1973); *Daly v. United States,* 483 F.2d 700, 704–705 (8th Cir. 1973); *White Eagle v. One Feather,* 478 F.2d 1311, 1314 (8th Cir. 1973). These cases established that where Indian tribes have adopted Anglo-Saxon democratic processes for selection of tribal representatives, equal protection concepts applicable to the tribes by virtue of the Indian Civil Rights Act required adherence to the one man one vote principle as a necessary concomitant of the election process. *White Eagle v. One Feather, supra,* 478 F.2d at 1314. Today we hold that 42 U.S.C. § 1985(3) protects the right to vote in tribal elections against interference from private conspiracies as well.

■ Under the Indian Commerce Clause[4] Congress has plenary authority over Indians. *Worcester v. Georgia, supra,* 31 U.S. (6 Pet.) at 559. Although the clause speaks of "Indian Tribes" the authority to legislate concerning individual Indians is necessarily included within the sweeping grant of congressional power. United States Department of the Interior, Federal Indian Law 22, n. 6 (1958) (hereinafter, Federal Indian Law). In 1924, Congress granted citizenship to all American Indians who had not previously enjoyed that status, including many Oglala Sioux. Act of June 2, 1924, ch. 233, 43 Stat. 253; *Iron Crow v. Oglala Sioux Tribe,* 231 F.2d 89, 97 (8th Cir. 1956). At that time certainly, if not before, Indians became endowed with the fundamental rights of national citizenship, including the right to vote. Federal Indian Law, 530.

■ The Pine Ridge Reservation, the tribal constitution which sets forth election procedures and the organization of the Oglala Sioux Tribe all exist pursuant to federal law, Act of Mar. 2, 1889; ch. 405, § 1, 25 Stat. 888; 25 U.S.C.

§§ 476, 477; *see Iron Crow v. Ogallala Sioux Tribe,* 129 F.Supp. 15, 18–20 (D.S. D.1955), *aff'd,* 231 F.2d 89 (8th Cir. 1956). The Oglala Sioux have established their system of representative government under the authority of these statutes, which in turn were enacted by Congress under the authority contained in the Indian Commerce Clause. In this way Congress has encouraged the development of democratic processes for the self-government of the Oglala Sioux, and extended to them the benefits of national citizenship. Since the right to vote in a system of representative government is one of the essential trappings of citizenship protected by the Constitution, we hold that Congress has necessarily granted it to the plaintiffs, and in a proper case, interference with the right to vote in a tribal election may be vindicated under 42 U.S.C. § 1985(3) as a deprivation of equal protection of the laws or equal privileges and immunities under the law.

■ The plaintiffs in this case have thus alleged facts to bring this case and some of the defendants within the jurisdiction of the federal courts. The complaint states that defendants conspired and did overt acts in furtherance of a conspiracy to deprive the plaintiffs of their right to vote because they were supporters of plaintiff Means and members of the American Indian Movement. In *Griffin* the court emphasized that in order to show a deprivation of equal protection or equal privileges and immunities which may be redressed under 42 U.S.C. § 1985(3), it must be shown that the conspirators were motivated by an invidiously discriminatory animus toward a racial group or perhaps another type of class. *Supra,* 403 U.S. at 102, 91 S.Ct. 1790. In interpreting this class-based discrimination test the Fifth Circuit has said:

There need not necessarily be an organizational structure of adherents, but there must exist an identifiable

4. "The Congress shall have Power . . . To regulate Commerce . . . with the Indian Tribes . . . ." U.S.Const. art. I, § 8.

body with which the particular plaintiff associated himself by some affirmative act. It need not be an oath of fealty; it need not be an initiation rite; but at least it must have an intellectual nexus which has somehow been communicated to, among and by the members of the group.

*Westberry v. Gilman Paper Co.,* 507 F.2d 206, 215 (5th Cir. 1975). This opinion was later withdrawn by the Fifth Circuit sitting en banc and the cause remanded with directions to dismiss it as moot, "so that it will spawn no legal precedents." *Supra,* 507 F.2d at 216. However, in our opinion, the reasoning above quoted was and is valid in the light of *Griffin.* The group of plaintiffs in this case, by their affirmative acts of supporting plaintiff Means and the American Indian Movement and attempting to oust Wilson as their Council President, were a class against whom, according to the allegations of their complaint, the defendants discriminated because of their class membership.(5) This brings their complaint within the ambit of 42 U.S.C. § 1985(3). *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973). We must now examine the complaint more closely to determine whether it states a claim under the statute as to any of the named defendants.

 Under Fed.R.Civ.P. 8, technical niceties of pleading are not required.

Rather, a short and plain summary of the facts sufficient to give fair notice of the claim asserted is sufficient. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Many of the plaintiffs' allegations fail to meet this test. At a minimum, the complaint must state some way in which the named defendants participated in the alleged conspiracy to take away the election rights of the plaintiffs. *Smallwood v. United States,* 358 F.Supp. 398, 408 (E.D.Mo.), aff'd mem., 486 F.2d 1407 (8th Cir. 1973); *see Ellingburg v. King,* 490 F.2d 1270, 1271 (8th Cir. 1974). In addition a complaint under 42 U.S.C. § 1985(3) must allege facts to show that intentional or invidious discrimination was the object of the conspiracy. *Griffin v. Breckenridge, supra,* 403 U.S. at 102–103, 91 S.Ct. 1790; *Snowden v. Hughes,* 321 U.S. 1, 7, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

 Most of the allegations against defendants as individuals either fail to identify any of the named defendants as a conspirator or fail to allege the required animus. The only possible adequate allegation of a conspiracy under 42 U.S.C. § 1985(3) which appears in the complaint is that defendant Wilson conspired with private individuals to insure his reelection by illegal means, and in furtherance of this conspiracy a private, unauthorized police force known as the "Goon Squad", was maintained by Wil-

(5) This case differs from those in which there was not a clearly defined class, e. g., *Ward v. St. Anthony Hosp.,* 476 F.2d 671, 676 (10th Cir. 1973); *Bricker v. Crane,* 468 F.2d 1228, 1233 (1st Cir. 1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973), or those in which there was a class, but the alleged conspiratorial discrimination was not *motivated by* plaintiffs' class membership. E. g., *Arnold v. Tiffany,* 487 F.2d 216, 218 (9th Cir. 1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *Hughes v. Ranger Fuel Corp.,* 467 F.2d 6, 10 (4th Cir. 1972). 42 U.S.C. § 1985(3) does not reach every injury suffered by an individual; that would be tantamount to a general federal tort law, which Congress does not have the power to enact.

The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided . . . by requiring, as an element of the cause of

action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim àt a deprivation of the equal enjoyment of rights secured by the law to all.

*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1798 (1971) (footnotes omitted). In this case, where the complaint alleges a conspiracy motivated by intent to deprive plaintiffs *qua* Means supporters of their right to vote, the "constitutional shoals" of interpreting the statute as a general federal tort law have been circumnavigated.

son which harassed and threatened those who opposed the Wilson administration. Defendant Glenn Three Stars is identified as leader of the force and another defendant, Bennie "Tote" Richards, is alleged to be a member. As to these two defendants and defendant Richard "Dick" Wilson we hold that the complaint very inartfully states a claim under 42 U.S.C. § 1985(3).

## III. The Indian Civil Rights Act.

■ We agree with the district court's conclusion that 25 U.S.C. § 1302[6] provides rights only against the tribe and governmental subdivisions thereof, and not against tribe members acting in their individual capacities. *Spotted Eagle v. Blackfeet Tribe,* 301 F.Supp. 85, 89–90 (D.Mont.1969). The statute provides that: "No Indian tribe in exercising powers of self-government shall . . ." engage in the prohibited conduct. 25 U.S.C. § 1302. "Indian tribe" and "powers of self-government" are defined in 25 U.S.C. § 1301(1) and (2).[7] When sections 1301 and 1302 are read together it is plain that only actions of the tribe and tribal bodies are constrained.

■ To some extent then, the historic immunity from suit has been abrogated by the Indian Civil Rights Act. *Daly v. United States,* 483 F.2d 700, 705 (8th Cir. 1973); *Luxon v. Rosebud Sioux Tribe,* 455 F.2d 698, 700 (8th Cir. 1972). Therefore, even though tribal immunity prevents suit against the tribe or its governmental arms under 42 U.S.C. § 1985(3), the Means supporters can still sue these bodies under 25 U.S.C. § 1302.

Subsection 8 of 25 U.S.C. § 1302 is modeled closely after the equal protection clause of the federal Constitution. Federal courts have refused to decide election contests based on equal protection arguments in the absence of allegations of intentional deprivation of the right to vote. *See Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Smith v. Cherry,* 489 F.2d 1098, 1102–1103 (7th Cir. 1974); *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973). Thus, in *Pettengill v. Putnam County R–1 School District,* 472 F.2d 121, 122 (8th Cir. 1973) we refused to decide a school bond election contest based on a contention that administrative errors had diluted plaintiffs' votes.

■ The district court correctly concluded that the standard for setting aside a tribal election must be at least as restrictive as that applied in non-Indian local election cases under the Constitution. We agree that there are no allegations of fact in the complaint to show that the Oglala Sioux Tribe or the Tribal Council has intentionally deprived Means supporters of equal protection of the law, nor that they have attempted to do so.

■ We note, however, that a claim of intentional interference with plaintiffs' voting rights is stated against the Tribal Election Board. Numerous election errors and irregularities allegedly

---

**6.** The specific provision with which we are concerned here is 25 U.S.C. § 1302(8):

> 25 U.S.C. § 1302. *Constitutional Rights*
> No Indian tribe in exercising powers of self-government shall—

> . . . . .

> (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law . . . .

**7.** 25 U.S.C. § 1301. *Definitions*

> For purpose of this subchapter, the term—
> (1) "Indian tribe" means any tribe, band, or other group of Indians subject to the jurisdiction of the United States and recognized as possessing powers of self-government;
> (2) "powers of self-government" means and includes all governmental powers possessed by an Indian tribe, executive, legislative, and judicial, and all offices, bodies, and tribunals by and through which they are executed, including courts of Indian offenses

> . . . .

842

affected the result of the election. In addition, the complaint states: "The three-person Election Board failed to provide proper instructions to election judges and clerks in a deliberate attempt to confuse the situation to insure the success of the illegal practices." This is alleged to be part of a conspiracy between Wilson and "other tribal officers" to insure Wilson's election. Although it seems to us that such an allegation would be difficult to prove, it would be sufficient to state a claim for denial of equal protection if this were alleged against a local government in a non-Indian case.

✓ ▇ Additional considerations of the desirability of preservation of unique tribal cultures and continued vitality of tribal governments underlie the Indian Civil Rights Act, however, and these considerations counsel great caution in applying traditional constitutional principles to Indian tribal governments. *O'Neal v. Cheyenne River Sioux Tribe,* 482 F.2d 1140, 1144 (8th Cir. 1973); Note, *The Indian Bill of Rights and the Constitutional Status of Tribal Governments,* 82 Harv.L.Rev. 1343, 1368 (1969). In this case, the alleged interference with plaintiffs' voting rights is not founded in tribal custom or governmental purpose which would justify modification of traditional equal protection concepts. Rather, the complaint alleges an intentional interference by the Election Board with tribal members' rights to participate in their government, which are granted them by the Oglala Sioux Constitution. We believe this alleged violation falls within the protection of 25 U.S.C. § 1302(8), and the Election Board is an "Indian tribe" exercising powers of self-government as defined by 25 U.S.C. § 1301(1) and (2). Therefore it was error to dismiss the complaint against the defendant, the Oglala Sioux Tribal Election Board.

The order of the district court is reversed with respect to dismissal of the complaint against Richard "Dick" Wilson, Glenn Three Stars, Bennie "Tote" Richards, and the Oglala Sioux Election Board; dismissal of the complaint against the other defendants is affirmed. The case is remanded to the district court for further proceedings consistent with this opinion.

WEBSTER, Circuit Judge (concurring in part and dissenting in part).

I concur in Parts I and III of the opinion, but I respectfully dissent from the holding in Part II.

I cannot agree that supporters of a particular candidate form a sufficiently discrete class upon which to predicate federal jurisdiction under 42 U.S.C. § 1985(3). Race is not involved in this contest; Indian supporters of one group of political candidates bring this action against Indian supporters of another. The holding in Part II of the majority opinion permits a non-insular, mutable, amorphous group to satisfy the alternative requirement in *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), that "there must be some racial, or perhaps *otherwise class-based,* invidiously discriminatory animus behind the conspirators' action." (Emphasis added.)

Taken to its logical extension this holding grants federal jurisdiction to any group of supporters of a local candidate who claim they were purposefully victimized by their opponents in state or local elections. Thus is introduced into our system a "general federal tort law" feared by Justice Stewart, author of *Griffin,* 403 U.S. at 102, 91 S.Ct. 1790.

Acceptance of my view on this point would not leave the plaintiffs without a remedy. See Point III of the majority opinion.