Thomas SHORTBULL, Appellant,

v.

Stanley LOOKING ELK, Elijah Whirlwind Horse, James Mousseau, Ivan Bettelyoun, Marvin Amiottee, Gerald "Jump" Big Crow, Lyman Red Cloud, Delores Whitehead, Edgar High Whiteman, Gilbert Mathews, Dave Brewer, and Jerry Matthews, Appellees.

No. 81–1280.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1981.

Decided May 3, 1982.

Ramon A. Roubideaux, Rapid City, S. D., for appellant.

Dennis H. Hill, Rapid City, S. D., for appellees.

Wm. Bradford Reynolds, Asst. Atty. Gen., Walter W. Barnett, Harold Levy, Attys., Dept. of Justice, Washington, D. C., for amicus curiae.

Before BRIGHT and ROSS, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Thomas Shortbull brings this appeal challenging the district court's order granting summary judgment against him. We, affirm.

The facts are set out fully in the district court's memorandum opinion. *See Shortbull v. Looking Elk, et al.*, 507 F.Supp. 917 (D.S.D.1981). Appellant Thomas Shortbull is a non-enrolled member of the Oglala Sioux Tribe. A member of the Tribe is

* Earl R. Larson, United States Senior District Judge, District of Minnesota, sitting by desig-

nation.

defined in the Tribal Constitution as follows:

Section 1—The membership of the Oglala Sioux Tribe shall consist as follows:

(a) All persons whose names appear on the official census roll of the Oglala Sioux Tribe of the Pine Ridge Reservation as of April 1, 1935, provided, that correction may be made in said rolls within five years from the adoption and approval of this constitution by the tribal council subject to the approval of the Secretary of Interior.

(b) All children born to any member of the tribe who is a resident of the reservation at the time of the birth of said children.

Section 2—The tribal council shall propose by-laws covering future membership and the adoption of new members.

An enrolled member is a person on the 1935 census roll of the Pine Ridge Reservation or the child of any tribe member who was a resident of the reservation at the time of the child's birth. Shortbull is a non-enrolled member, or N.E., because although his father is a member of the Tribe, Shortbull was born off the reservation in Igloo, South Dakota, where his father was employed.

The controversy involved in the present suit arose when Shortbull filed nominating petitions to have his name placed on the ballot for the January 1980 primary election for the office of President of the Oglala Sioux Tribe on the Pine Ridge Reservation. Shortbull's nominating petitions were rejected by the Tribal Election Board because the tribal ordinances required that the President be an enrolled member. Shortbull then sought permission to run in the primary election from the Tribal Council. On January 24, the Council enacted Tribal Resolution 80–12, which provided:

BE IT RESOLVED that the Oglala Sioux Tribal Election Board is hereby directed and authorized to forthwith accept the petition of Thomas Shortbull to run for Tribal President and certify him as a candidate in the upcoming election.

The resolution indicated that the Tribe had experienced difficulty in providing a procedure whereby memberships in the Tribe could be processed, and had enacted ordinances providing for enrollment that had not been implemented.[1] On January 29, the

1. Tribal Ordinance 79–08 established the following procedures for enrolling tribal members born since 1935:

Section 201. *Publication of Preliminary List.* The Department of Enrollment shall at the earliest possible opportunity publish a preliminary list of all enrolled members of the Oglala Sioux Tribe, listing names, date of birth, and degree of tribal ancestry. A copy of that list shall be available for inspection at the office of the Oglala Sioux Tribe during regular business hours and at such other conspicuous [sic] public places throughout the Pine Ridge Indian Reservation as the Department of Enrollment may direct.

Section 202. *Claims for Enrollment.* (a) Any person born prior to the date of publication of the preliminary list of enrolled members who does not appear on the list and for whom a claim for enrollment is made, may apply for enrollment to the Department of Enrollment, either in person, or in the case of a minor or a person *non compos mentis* through a parent, guardian, or next friend. Such application shall be made on such form as the Department shall prescribe and shall be filed within six months of the date of publication of the preliminary list.

(b) The names of all applicants for enrollment under subsection (b) shall be posted on the public bulletin board of the Oglala Sioux Tribe and at such other conspicuous public places through the Pine Ridge Indian Reservation as the Department of Enrollment may direct, for at least fourteen days before any application may be acted on by the Department.

*Residency Requirements*: (a) A person who leaves the Reservation for service in the armed forces of the United States or for any other employment with the United States Government or for attendance at an educational institution shall be considered to be a resident of the reservation for as long as such service, employment or attendance continues and for an additional six months.

(b) A person who left the reservation for the purpose of employment during the period December 7, 1941 through August 14, 1945, and returned to reside on the reservation on or before December 31, 1945, shall be considered to be a resident of the reservation during the period of such absence.

(c) A person who resided within the former Pine Ridge Aerial Gunnery Range and left the reservation following or in anticipation of the taking of the Gunnery Range by

Council passed a subsequent resolution that stated: "Tribal Council body to uphold the Constitution and Bylaws and Election Ordinance, and also uphold any decision of the Election Board." Appellees asserted that this January 29 resolution rescinded Resolution 80–12, but on January 30 Chief Tribal Court Judge H. Clyde Red Shirt disagreed, and ordered the Election Board to certify Shortbull as a candidate and place his name on the ballot pursuant to the Council's January 24 resolution.

On February 1, Chief Judge Red Shirt held certain tribal officials in contempt for failing to place Shortbull's name on the ballot, but because of this action, the Tribal Executive Committee suspended Judge Red Shirt [2] and replaced him with Judge White-head. Judge Whitehead quashed Judge Red Shirt's orders, and the Election Board notified Shortbull that he was not eligible to run for Tribal President. On February 4, Judge Red Shirt ruled that he was still Chief Judge and had arrest warrants issued for those persons he had held in contempt of court on February 1. He also ordered the postponement of the February 5 primary election. Judge Whitehead immediately quashed the arrest warrants and ordered that the February 1 contempt citations be purged from the records. The primary election was held February 5, and Shortbull did not participate as a candidate.

On March 17, 1980, Shortbull brought the present action in Federal court under 42 U.S.C. § 1985(c) [3] against defendants Judge

---

the United States Government, and returned to reside on the Reservation on or before December 31, 1945, shall be considered a resident of the reservation during such absence.

(d) A person who leaves the reservation for the purpose of employment shall be considered a resident of the reservation during such absence if: (1) he or she continues to own an interest (legal or beneficial) in land within the reservation, or (2) he or she returns to reside on the reservation within five years.

(e) A person who leaves the reservation and thereby ceases to be a resident shall be considered to have re-established residence on the reservation if such person maintains his or her permanent residence on the reservation for a period of one year.

This ordinance has not been implemented, but Shortbull's attorney argued to the Tribal Council that Shortbull met the residency requirements of provisions (a), (d) and (e) of the ordinance.

The January 24 resolution (Resolution 80–12) provided in full:

RESOLUTION DIRECTING THE OGLALA SIOUX TRIBAL ELECTION BOARD TO CERTIFY THOMAS SHORTBULL AS A CANDIDATE FOR TRIBAL PRESIDENT.

WHEREAS, the Oglala Sioux Tribe has experienced considerable difficulty in providing for a procedure to process applications for membership in the Tribe and nothing definitive about such procedure has been accomplished for a great many years, and

WHEREAS, certain ordinances passed by the Tribe governing enrollment have not been implemented in time for various persons to vote and run for Tribal Office, and

WHEREAS, previously, non-enrolled members of the Tribe have been frustrated in their attempts to participate in Tribal Government to the full extent even though they were entitled to membership buy [sic] have been unable to vote or run for office, with few expections [sic], and

WHEREAS, Thomas Shortbull, who is registered as N.E. presented his sufficient petitions to run for Tribal President to the Tribal Election Board prior to the deadline on January 9, 1980 and even though he also presented his documentation to said Board, it has refused to act on these petitions and to certify him as a candidate in the upcoming election, and

WHEREAS, time is of the essence and unless the Council takes action to certify him as a candidate, he will be prevented from running in the upcoming election, now

THEREFORE, BE IT RESOLVED that the Oglala Sioux Tribal Election Board is hereby directed and authorized to forthwith accept the petition of Thomas Shortbull to run for Tribal President and certify him as a candidate in the upcoming election.

2. Shortbull alleged that this suspension was illegal since Judge Red Shirt was not given a hearing and the Executive Committee gave no reasons for the suspension, although just cause is required by tribal ordinance.

3. 42 U.S.C. § 1985(c) was codified as § 1985(3) prior to 1976. This statute provides in part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... in any case of conspiracy set forth in this

Whitehead, the Tribal President, two tribal attorneys, and various other tribal officials, including the members of the Tribal Election Board and the members of the Tribal Executive Committee. In his complaint Shortbull alleged that these individuals conspired to deprive him of his right—as determined by Judge Red Shirt and the Tribal Council resolution—to have his name placed on the ballot for the primary election. District Judge Andrew Bogue ruled against the appellees' motion to dismiss and against Shortbull's motion to disqualify appellees' attorney, but after presenting the district court with Shortbull's deposition and accompanying exhibits, the appellees renewed their motion to dismiss and asked the district court to consider it a motion for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. On February 19, 1981, the district court granted appellees' motion, and Shortbull has appealed.

In reviewing Judge Bogue's decision to grant summary judgment, we apply the same standard as the district court. Summary judgment may only be granted if there is no genuine issue of material fact: there may be no controversy that the appellees in this case have established their right to judgment. Summary judgment may not be granted if appellant Shortbull is entitled to recover under any circumstances, and the facts must be viewed in the light most favorable to him. *See Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980); *Penne v. Greater Minneapolis Area Board of Realtors*, 604 F.2d 1143, 1148 (8th Cir. 1979); *Butler v. MFA Life Insurance Co.*, 591 F.2d 448, 451 (8th Cir. 1979).

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court set forth the four basic elements necessary to state a cause of action under 42 U.S.C. § 1985(c): (1) a conspiracy,

(2) for the purpose of depriving any person or class of persons of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) resulting injury or the deprivation of any right or privilege of a citizen of the United States. *Id.* at 102–03, 91 S.Ct. at 1798–99. The Court in *Griffin* indicated that the second requirement "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798 (footnote omitted). In granting summary judgment the district court found that Shortbull had raised a factual issue as to the first, third, and fourth requirements established by *Griffin*, but determined that there was no conceivable set of facts that could support recovery as to the second element of the *Griffin* test. Shortbull's complaint in this regard alleged:

> Defendants' actions were motivated by an invidious discriminatory animus towards plaintiff, because of his membership in the class of people classified as "N.E." on the official B. I. A. Census rolls and his political opposition to said defendants.

The district court held that Shortbull's claim that he was discriminated against because of his individual political opposition to the appellees was not a class-based claim, and his claim that he was discriminated against because of his status as an N.E. was not actionable under § 1985(c) because the criteria defining the N.E. class were not invidious.

In *Griffin*, the Supreme Court ruled that a racially discriminatory conspiracy was actionable, *see Griffin v. Breckenridge*, 403 U.S. at 102 n.9, 103, 91 S.Ct. at 1798, 1799, and the Court has implicitly held that discrimination on the basis of sex is sufficient under the statute, *see Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 389 n.6, 99 S.Ct. 2345, 2357, 60

section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the

United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

L.Ed.2d 957 (1979), but beyond these two cases, there is significant confusion over what classes are protected under § 1985(c). *See* Note, *The Class-Based Animus of 42 U.S.C. § 1985(c): A Suggested Approach*, 64 Minn.L.Rev. 635, 642–44 (1980). Most courts have extended protection to other suspect-like classes, such as those based on religion, *see, e.g., Ward v. Connor*, 657 F.2d 45 (4th Cir. 1981) (appeal pending); *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973); *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971); *Baer v. Baer*, 450 F.Supp. 481 (N.D.Cal.1978), or those defined by ideology or the exercise of a fundamental right. *See, e.g., Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate*, 519 F.2d 1335 (3d Cir. 1975); *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973); *Puentes v. Sullivan*, 425 F.Supp. 249 (W.D.Tex.1977). The ultimate test, of course, is whether the classification is sufficiently "invidious" so as to fall within the statute's ambit. *See Harrison v. Brooks*, 519 F.2d 1358, 1359–60 (1st Cir. 1975).

In *Means v. Wilson*, 522 F.2d 833 (8th Cir.), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1975), this Court was confronted with another § 1985(c) complaint arising from an election dispute on the Pine Ridge Reservation. In *Means*, we reversed the dismissal of the complaint filed by Russell Means, an unsuccessful candidate for President of the Oglala Sioux Tribe, and a group of his political supporters. All of the plaintiffs in *Means* were enrolled members of the Tribe, and we found that their complaint alleged a cause of action under § 1985(c) because it stated that "defendants conspired and did overt acts in furtherance of a conspiracy to deprive the plaintiffs of their right to vote because they were supporters of plaintiff Means and members of the American Indian Movement." *Id.* at 839. We held that "[t]he group of plaintiffs in this case, by their affirmative acts of supporting plaintiff Means and the American Indian Movement and attempting to oust Wilson as their Council President, were

a class against whom, according to the allegations of their complaint, the defendants discriminated against because of their class membership." *Id.* at 840 (footnote omitted).

We agree with the district court's assessment that Shortbull's allegations are distinguishable from those made by the plaintiffs in *Means*. Shortbull's suggestion that he was discriminated against because of "his political opposition to said defendants" does not appear to raise a class-based claim. The term class-based animus does not include personal animus, *see Duff v. Sherlock*, 432 F.Supp. 423, 429 (E.D.Pa.1977) and cases cited therein, and Shortbull's allegation that appellees discriminated against him because of his individual political opposition to them is not actionable under § 1985(c). *See Lessman v. McCormick*, 591 F.2d 605, 608 (10th Cir. 1979) (no animus against anyone other than individual plaintiff-debtor); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 75 (8th Cir.), *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976) (citing *McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870, 878 (5th Cir. 1976), *aff'd in part, vacated in part*, 545 F.2d 919 (5th Cir. 1977)); *Carchman v. Korman Corp.*, 456 F.Supp. 730, 734 (E.D.Pa. 1978), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979) ("there must be a discriminatory animus toward a *class*, not toward an individual qua individual"). Indeed, Shortbull does not appear to question this determination on appeal.

The class-based claim that Shortbull urges on appeal is that he was discriminated against because of his status as a non-enrolled member of the Tribe. He asserts that he is being denied the right to run and vote in tribal elections solely because of his membership in the class of N.E.s, and that such discrimination is impermissible and actionable under § 1985(c). We must disagree. The Oglala Sioux have an important interest in setting the standards for who may vote and run in tribal elections. In *Daly v. United States*, 483 F.2d 700 (8th Cir. 1973), this Court held that the Crow Creek Sioux Tribe could uniformly require the

Tribal Council members be one-half or more Indian blood, because "the Tribe has a sufficient cultural interest in setting a higher blood quantum requirement to hold office than for mere membership in the Tribe if it so desires." *Id.* at 705–06 (footnote omitted). The Court viewed such a standard as similar to the one contained in the United States Constitution that the President of the United States be a natural born citizen. *See id.* at 706 n.4. Moreover, "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32, 98 S.Ct. 1670, 1684, 56 L.Ed.2d 106 (1978). The right to define who is eligible to run for office and vote in elections must be viewed in a similar manner. The policy of promoting Indian self-government, *see, e.g., id.* at 62, 1679, thus suggests that requiring presidential candidates to be enrolled members of the Tribe is a legitimate political determination that does not create an invidiously discriminatory classification. Because Shortbull has failed to demonstrate that the exclusion of non-enrolled members of the Tribe as a class is invidiously discriminatory, the district court's grant of summary judgment must be affirmed.

We must, however, express serious concern that Shortbull's rights under § 1302 of the Indian Civil Rights Act (ICRA)[4] may never be vindicated. Shortbull alleges that the tribal court, Chief Judge Red Shirt, ruled that he was entitled to run in the primary election because of the Tribal Council's January 24 resolution. It appears that because of this ruling, Judge Red Shirt was removed from office and was replaced by a judge more sympathetic to the Tribal Executive Committee, who quashed Judge Red Shirt's orders. Such actions raise serious questions under the Indian Civil Rights Act, but because the Supreme Court determined in *Martinez* that there is no private

right of action under the ICRA, Shortbull has no remedy. Indeed, were we to find that he had alleged sufficient class-based animus to come within the ambit of § 1985(c), we would have to confront the question of the source of Federal power to reach the private conspiracy under § 1985(c). There is no question that the *Martinez* decision affects such a determination. *See Means v. Wilson*, 522 F.2d at 838–39.

We are thus presented with a situation in which Shortbull has no remedy within the tribal machinery nor with the tribal officials in whose election he cannot participate, *compare Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682, 685 (10th Cir. 1980), *cert. denied*, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981), unless and until Congress provides otherwise. *See Santa Clara Pueblo v. Martinez*, 436 U.S. at 72, 98 S.Ct. at 1684. We question whether such a result is justified on the grounds of maintaining tribal autonomy and self-government: it frustrates the ICRA's purpose of "protect[ing] individual Indians from arbitrary and unjust actions of tribal governments," and in this case it renders the rights provided by the ICRA meaningless. *Id.* at 73, 83, 98 S.Ct. at 1684, 1689 (citations omitted) (J. White, dissenting).

Because we find that the district court was correct in its determination that the appellees' actions in preventing Shortbull from running for office because he was a non-enrolled member of the Tribe were not motivated by an invidiously discriminatory animus as required by § 1985(c), we need not reach the questions of whether Shortbull failed to exhaust his administrative remedies or whether appellees' attorney should have been disqualified. The judgment of the district court is, accordingly, affirmed.

\* \* \* \* \* \*

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.

---

4.  Section 8 of the Indian Civil Rights Act provides as follows:
    25 U.S.C. § 1302. *Constitutional rights.*
    No Indian tribe in exercising powers of self-government shall—