The SAC AND FOX TRIBE OF INDIANS OF OKLAHOMA, and the United States of America ex rel. G. William Rice on behalf of The Sac and Fox Tribe of Indians of Oklahoma, Plaintiffs-Appellants,

v.

APEX CONSTRUCTION COMPANY, INC., a corporation; Breisch Engineering Company, Inc., a corporation; and Oklahoma Surety Company, a corporation, Defendants-Appellees,

and

Western Construction Company of Oklahoma, Inc., a corporation, Defendant.

No. 83–1374.

United States Court of Appeals, Tenth Circuit.

March 11, 1985.

F. Browning Pipestem, Norman, Okl. (G. William Rice, Norman, Okl., with him on brief), for plaintiffs-appellants.

John B. Hayes of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., for defendants-appellees Apex Const. Co., Inc. and Okl. Sur. Co.

J. Jayne Jarnigan, Oklahoma City, Okl. (Gregory L. Mahaffey, Oklahoma City, Okl., on brief), of Mahaffey, Gore & Brickell, P.C., Oklahoma City, Okl., for defendant-appellee Breisch Engineering Co., Inc.

Before McKAY, SETH and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiffs appeal from the dismissal of their complaint for failure to state a claim under 25 U.S.C. § 81 (1982). We affirm the judgment of the district court.

In 1977, the Sac and Fox Indian Tribe of Oklahoma won a grant from the Economic Development Administration (EDA) of the Department of Commerce for the purpose of building a museum and cultural center upon land held in trust for the Tribe by the United States. The Tribe employed defendant Breisch Engineering to design the center and awarded the construction contract to defendant Apex Construction as the low bidder.[1] The contract price was over $300,000, to be paid from the EDA grant mo-

---

1. The third defendant, Oklahoma Surety, executed a surety performance bond with Apex as principal, naming the Tribe as obligee.

nies. The center was completed and both defendants were paid in full.

Several years later, the Tribe encountered severe defects in the buildings, apparently due to faulty design and/or construction. Plaintiffs filed this action alleging that the contracts were void under 25 U.S.C. § 81 for failure to obtain the approval of the Secretary of the Interior. They sought recovery of all monies paid by the Tribe under the contracts. Alternatively, they claimed that defendants had breached their respective contracts and sought damages.

Section 81 provides in pertinent part:

"No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or thing, under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows:

". . . .

"Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.

". . . .

"All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid."

The district court held that the purpose of this statute is "to protect Indian people from dissipating their lands through agreements for imaginary services costing exhorbitant amounts. That situation does not exist in the case before this Court." Rec., vol. I, at 270. The court also stated that it was "not convinced that the contracts at issue provide services for Indians 'relative to their lands.'" *Id.* at 272. Finally, the court concluded that the statute applies only to tribal funds and not to grant monies received from the EDA. He therefore granted defendants' motion to dismiss.

We need not decide whether the district court was correct in holding that section 81 does not govern the type of contract present here because we agree that the statute does not apply to the EDA grant monies that were expended. As the Eighth Circuit recognized in *Brown v. United States*, 486 F.2d 658 (8th Cir.1973), the statute governs only "the right to be compensated from tribal funds." *Id.* at 661 n. 2. The EDA grant monies were awarded for the specific purpose of building a museum and cultural center. The Tribe then solicited bids and awarded the construction contract to the lowest bidder. Presumably, the grant included certain procedural requirements designed to prevent improper use of the funds. We can see no reason to require approval from the Secretary of the Interior for the expenditure of funds approved and released by another governmental department. The statute is designed to protect the funds of the Tribe, not grant monies of the United States expended for the benefit of the Tribe.

The Supreme Court recognized the distinction between tribal funds and public monies of the United States in *Quick Bear v. Leupp*, 210 U.S. 50, 28 S.Ct. 690, 52 L.Ed. 954 (1908). There, the Court upheld

 

the expenditure of tribal funds which belonged to the Indians themselves to support sectarian schools, but acknowledged that gratuitous appropriations of public monies raised by taxation could not be similarly spent. As the Court noted: "One class of appropriations relates to public moneys belonging to the Government; the other to moneys which belong to the Indians and which is administered for them by the Government." *Id.* at 77, 28 S.Ct. at 694–95. *See also Scholder v. United States*, 428 F.2d 1123, 1129 (9th Cir.) (use of public monies appropriated for Indian irrigation system to build an irrigation lateral on non-Indian land was not an unconstitutional taking of funds held in trust for Indians), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970).

Tribal funds are principally raised through the sale of tribal resources or through treaty payments by the United States for land cessions or other dispositions of tribal property. Although these funds belong to the Tribe, they are held in trust by the United States and are administered by the Department of the Interior. *See generally,* F. Cohen, Handbook of Federal Indian Law, ch. 9, § D (1982). The statute specifically refers to "any claims growing out of ... annuities, installments, or other money ... under laws or treaties with the United States ... or due from the United States." This language embraces those funds which already belong to a tribe through the sale of tribal resources or which constitute installment payments due the tribe under a treaty with the United States. *See also Quick Bear*, 210 U.S. 50, 28 S.Ct. 690, 52 L.Ed. 954. Approval by the Secretary for the release of these funds protects tribal property from ill-advised dissipation. Conversely, public grant monies released by an alternative federal source require no such approval or protection. *See Cohen, supra,* ch. 13, § G.

In conclusion, we agree that section 81 governs only those contracts involving the expenditure of tribal funds. Consequently, plaintiffs have not stated a claim under that section. The Tribe must pursue its remedies for breach of the contracts in the appropriate forum. *Cf. Gila River Indian Community v. Henningson, Durham & Richardson*, 626 F.2d 708, 714–15 (9th Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981).

The judgment of the district court is affirmed.