Mary **DALY** et al., Appellees,

v.

**UNITED STATES** of America et al.,
Appellants.

No. 73–1248.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1973.

Decided Aug. 23, 1973.

Keith A. Tidball, Pierre, S. D., for appellants.

Mark V. Meierhenry, Rosebud, S. D., for appellees.

Before CLARK, Associate Justice, Retired,* and HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

This class action was brought on February 22, 1972, by three enrolled members of the Crow Creek Sioux Tribe against the Tribe, the incumbent Tribal Council members, the United States of America, the Secretary of the Interior and the Commissioner of the Bureau of Indian Affairs. The plaintiffs complained that the Tribal Council was malapportioned and that they, and those they sought to represent, were underrepresented on the Council. They urged that the alleged malapportionment violated the one-man, one-vote principle and, thus, denied to them equal protection of the laws as guaranteed by the Indian Civil Rights Act, 25 U.S.C. § 1302(8).

The Crow Creek Tribe adopted a Constitution and By-Laws in 1949. The provisions set forth below are those which were in effect at the time this action was initiated. The Constitution provided for a six-member Tribal Council. It was to be the governing body of the Tribe. Two councilmen were to be elected from each of three districts— Crow Creek, Big Bend and Ft. Thompson. The Constitution provided that Council members elected after the first election were to have staggered two-year terms, with one of the two members from each district elected in each annual election. A chairman and other officers were to be elected by the Tribal Council from its own number. Resident members of the Tribe of at least eighteen years of age at the time of election were eligible to vote. Membership in the

* United States Supreme Court, sitting by designation.

Tribe[1] and eligibility for office[2] were restricted by blood quantum requirements. The eligibility requirement was designed to insure that at least one of the two members from each district would be of one-half, or more, Indian blood. No amendments relevant to the issues raised here have been enacted.

The plaintiffs alleged that the number of eligible voters in each district was: Crow Creek, 75; Big Bend, 47; Ft. Thompson, 350. As residents of Ft. Thompson, the plaintiffs maintained that they were under-represented on the Council and that the districts were malapportioned. They brought this action under the Indian Civil Rights Act, 25 U.S.C. § 1302(8), and sought: (1) a temporary injunction restraining the defendants from conducting the annual tribal election for members of the Tribal Council during the pendency of the action; (2) a declaratory judgment that the districts, as then constituted, denied the plaintiffs equal protection of the laws; and (3) a permanent injunction prohibiting any future elections under the then existing procedures, coupled with a mandatory injunction requiring the defendants to submit to the District Court a new apportionment plan for the Reservation which would provide the plaintiffs with fair representation on the Tribal Council.

On April 14, 1972, the District Court ruled that it had jurisdiction over the action. It held that the existing districts were malapportioned and deprived the plaintiffs of equal protection of the laws. It denied the request for a preliminary injunction and ordered that the election, scheduled for April 20, 1972, should be held as scheduled, but that it should be at-large, rather than by districts. The court gave the Tribal Council six months to submit an acceptable and reasonable apportionment plan which would comport with the spirit of the one-man, one-vote doctrine.

The Tribal Council submitted an apportionment plan to the District Court on September 29, 1972. The plan was in the form of proposed amendments to the Constitution, the amendments to be submitted to the people of the Tribe for ratification after approval by the court. The plan provided for an at-large election of the Tribal Council Chairman, with five councilmen being elected from the three existing districts. The Big Bend and Crow Creek districts were to each have one councilman and the Ft. Thompson district was to have three councilmen. The Chairman and at least

---

1. "ARTICLE II—MEMBERSHIP

"SECTION 1. All persons of Indian blood whose names appear on the official census roll of the Crow Creek Reservation as of July 1, 1948, shall be members of the Tribe, Provided, that the Tribal Council shall have power to revise said roll, with the approval of the Secretary of the Interior or his authorized representative, at any time within five years from the date of the approval of this Constitution.

"SEC. 2. (a) Any child, of ·one-fourth (¼) or more Indian blood born to any member of the Tribe who at the birth of such child resided on the reservation shall be entitled to membership.

"(b) Any child of one-half (½) or more Indian blood born to any member shall be entitled to membership regardless of his parents' residence.

  *  *  *  *  *

"(d) Applications for membership shall be submitted by the applicant or his parent or guardian to a Committee on Membership, which shall pass upon them and present them to the Tribal Council for final action." *Crow Creek Sioux Tribe Constitution.*

2. "At the first election the candidate from each district receiving the highest number of votes shall be certified for the two-year term. The candidate receiving the next highest number of votes shall be certified for the one-year term unless both candidates are of less than one-half Indian blood in which case the candidate of one-half or more Indian blood receiving the highest number of votes shall be certified for the one-year term. Thereafter one member from each district shall be elected each year.

"After the first election no member of less than one-half Indian blood shall be permitted to file as a candiate unless the Council member whose term does not expire is of one-half or more Indian blood." *Crow Creek Sioux Tribe Constitution,* Art. III, Sec. 4.

one councilman from each district were required to be of one-half, or more, Indian blood. The plan also provided for a primary election to be held prior to the general election.

The District Court issued its "Findings of Fact and Conclusions of Law" and "Order" on February 14, 1973. It found that at the time of the April 1972 election, the districts had the following number of eligible voters: Crow Creek, 77; Big Bend, 47; and Ft. Thompson, 355. The court, again, held that the voting districts, as then constituted, were violative of the one-man, one-vote doctrine, and the concept of equal protection of the laws guaranteed by the Indian Civil Rights Act, 25 U.S.C. § 1302(8). The court declared that the plaintiffs did not have an adequate remedy at law and that immediate relief was appropriate. It vacated all six seats on the Tribal Council as of April 19, 1973, and ordered a general election to fill those seats on that date. The court ruled that the districts were to elect the following number of councilmen: Crow Creek, 1; Big Bend, 1; and Ft. Thompson, 4. It further ordered the Superintendent of the Bureau of Indian Affairs to supervise the election, and directed him to apply the Tribal rules regarding qualifications and eligibility of candidates "except that there should be no blood quantum requirement for any enrolled member of the tribe who meets the other qualifications for eligibility as tribal councilman." Finally, the court indicated that its apportionment plan was binding only for the 1973 election, and that the newly-elected Tribal Council could adopt an alternative plan which would comply with one-man, one-vote principles. The court did not discuss the plan submitted by the Tribal Council, but a rejection of the plan is implicit in its order.

On April 5, 1973, the defendant Tribal Council members (those who were in office when the suit was initiated) petitioned the District Court for a rehearing and a stay of execution; both motions were denied by the court in an or-der of April 12, 1973. On that date, the same defendants filed a Notice of Appeal in the District Court, and also filed a Motion for Stay of Execution with this Court. We denied the latter motion on April 18, 1973, and the election was held on April 19, 1973, as the District Court had ordered.

The only appellants are the defendant Tribal Council members who were in office on the date plaintiffs initiated this action in the District Court. They contend, on this appeal, that the District Court:

(1) was without jurisdiction over the subject matter;

(2) erred by allowing the Tribe and its officials to be sued despite their sovereign immunity;

(3) erred by striking out the blood quantum requirement for membership on the Tribal Council;

(4) erred by extinguishing the terms of the three councilmen who were elected at-large pursuant to its order of April 14, 1972;

(5) ordered implementation of a plan which fails to comply with the one-man, one-vote doctrine; and

(6) erred by summarily denying the appellants' petition for rehearing.

We deal with these contentions in the order raised.

## SUBJECT MATTER JURISDICTION

██ The appellants contend that the District Court was without subject matter jurisdiction for three reasons. First, the equal protection clause in the Indian Civil Rights Act, 25 U.S.C. § 1302(8), does not extend the one-man, one-vote doctrine to tribal council elections. That position was rejected in Melvin White Eagle, etc., et al. v. Philomene One Feather et al., 478 F.2d 1311 (8th Cir. 1973). In *One Feather*, we held that where a tribe has adopted election procedures analogous to those found in Anglo-American culture, the equal protection clause of the Indian Civil Rights Act required that the election

procedures comply with the one-man, one-vote principle established by Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962), and its progeny. We follow *One Feather* here and hold the District Court was correct in assuming jurisdiction:

" * * * [O]nce the applicability of Section 1302(8) is established as comprehending the one-man, one-vote principle * * * the cause of action * * * is clearly within the jurisdiction of the District Court * * * under 28 U.S.C. § 1343(4) * * *." (Citation omitted.)

Melvin White Eagle, etc., et al. v. Philomene One Feather, et al., *supra*, 478 F. 2d at 1314.

■ Second, the District Court lacked jurisdiction because the Tribe did not consent to the Indian Reorganization Act of 1934, 25 U.S.C. § 461, et seq. There is no merit to this argument. This action was brought under the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303, and the provisions of that Act apply to all Indian tribes subject to the jurisdiction of the United States which possess powers of self-government. See, 25 U.S.C. §§ 1301–1302. The Crow Creek Sioux Tribe possesses these powers and its consent to the 1934 Act is unnecessary.

■ Third, the District Court was without subject matter jurisdiction because the plaintiffs failed to show that they had exhausted their tribal remedies.[3] The plaintiffs, in short, reply that there were no tribal remedies available for them to exhaust. We are satisfied that the plaintiffs' position is accurate and, accordingly, the District Court properly assumed jurisdiction. See, *e. g.*, McCurdy v. Steele, 353 F. Supp. 629, 636 (D.Utah 1973).

## SOVEREIGN IMMUNITY

■ The appellants contend that the Crow Creek Sioux Tribe and, hence, the Council members, have sovereign immunity and may not be sued absent Congressional authorization. We disagree. While the Indian Civil Rights Act does not abrogate the sovereign immunity of Indian tribes by specific language, we read the Act to do so by implication. We are convinced that this interpretation is consistent with Congressional intent as without such a reading, enforcement of the Act's provisions could not be effected. Therefore, we hold that the District Court properly allowed this suit against the Tribe and its officials. See, McCurdy v. Steele, *supra* at 636; Seneca Constitutional Rights Organization v. George, 348 F.Supp. 48 (W.D.N.Y. 1972); Loncassion v. Leekity, 334 F. Supp. 370 (D.N.M.1971).

## BLOOD QUANTUM REQUIREMENT

■ The Tribe's Constitution was designed to insure that at least one-half of the councilmen from each district were of one-half, or more, Indian blood. See, n.2, *supra*. We believe that such a requirement, if applied uniformly, is not in conflict with the Indian Civil Rights Act's guarantee of equal protection of the laws. In our view, this is one of those "respects [in which] the equal protection requirement of the Fourteenth Amendment should not be embraced in the Indian Bill of Rights." Groundhog v. Keeler, 442 F.2d 674, 682 (10th Cir. 1971). But see, Note, "The Indian Bill of Rights and the Constitutional Status of Tribal Government," 82 Harv.L.Rev. 1343, 1360–1363 (1969). In the instant case, we also are convinced that the Tribe has a sufficient cultural interest in setting a higher blood quantum requirement to hold office than for mere membership in the Tribe if it so

---

3. In Charles O'Neal et al. v. Cheyenne River Sioux Tribe, etc. et al., 482 F.2d 1140 (8th Cir., 1973), this Court ruled that the individual Indian plaintiffs must exhaust tribal remedies in civil disputes before "bringing suit in federal court on an action predicated essentially upon the Indian Bill of Rights. 25 U.S.C. § 1302. * * *" *Id.*, at 1142.

desires.[4] However, once the requirements are established, they must be applied uniformly to avoid violating 25 U. S.C. § 1302(8).

Normally, it would have been improper for the District Court to alter a blood quantum requirement. Yet, at the same time, we understand the trial court's plight. It was faced with the practical difficulty of designing an apportionment plan which would alter the representation from the various districts, if not the districts themselves, and which, at the same time, would comport with a blood quantum requirement that was designed for two-member districts. The blood quantum provision in the Tribe's Constitution simply did not fit the plan which the trial court adopted—*viz*, two single-member districts and one four-member district. The trial court chose to meet the problem by eliminating the blood quantum requirement for the impending election, and providing that its plan was to be used only for that election. In view of the circumstances faced by the trial court, we cannot say that it acted improperly in eliminating the blood quantum requirement for the April 1973 election, and we will not disturb the election on that basis. We make clear, however, that the Indians, in designing their own apportionment plan and election rules, are entitled to set those requirements they find appropriate so long as they are uniformly applied.[5]

### EXTINGUISHING TERMS OF TRIBAL COUNCILMEN

The District Court did not err by declaring all six seats on the Tribal Council vacant as of April 19, 1973, even though in the prior year the court had ordered that three of those seats were to

be filled in the April 20, 1972, at-large election. The April 14, 1972, ruling was an interim order designed to give immediate relief pending a more thorough revamping of the election processes. The court was acting under severe time pressures in 1972, and we are convinced that it acted properly in vacating all six seats to effect its final plan in 1973:

"Application of interim remedial techniques in voting rights cases has largely been left to the district courts. Reynolds v. Sims, [377 U.S. 533], at 585 [84 S.Ct. 1362, at 1393, 12 L.Ed.2d 506]. The courts are bound to apply equitable considerations and in Reynolds it was stated that '[i]n awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws. . . .' Ibid."

Mahan v. Howell, 410 U.S. 315, 332, 93 S.Ct. 979, 989, 35 L.Ed.2d 320 (1973).

### ONE-MAN, ONE-VOTE

The appellants' fifth contention is that the District Court's plan should be set aside because it allows for too much variation between the number of eligible voters per councilman in the districts—one per seventy-seven in Crow Creek, one per forty-seven in Big Bend, and one per ninety in Ft. Thompson. This variation far exceeds that permitted to state legislatures by the Supreme Court, see, Mahan v. Howell, *supra,* and cannot be tolerated. Moreover, the District Court based its apportionment plan on the number of eligible voters in each district. This was improper. The apportionment plan must be based on the population of the Tribe and not solely those eligible to vote. See, Melvin

4. In reaching this conclusion, we are mindful of the fact that the United States Constitution provides that only a "natural born citizen, or citizen of the United States, at the time of the adoption of this Constitution, shall be eligible to the Office of President * * *." United States Constitution, Art. II, § 1, cl. 4.

5. Whatever rules are adopted, they must have the same effect in all districts. For example, a rule which in operation would allow those of less than one-half Indian blood to be councilmen in one or more districts but not in others would be impermissible.

White Eagle, etc., et al. v. Philomene One Feather et al., *supra,* 478 F.2d at 1315. In so holding, we express no opinion as to whether or not the Tribe should take into account members of the Tribe who do not reside on the Reservation. That is a purely internal decision which must be made by the Tribe itself. We note, however, that the Constitution, as currently written, limits eligibility for voting to those residing on the Reservation at the time of the election.

## PETITION FOR REHEARING

Finally, in view of the fact that it is necessary to remand this action to the District Court for further proceedings on other issues, we need not decide whether the court erred by summarily denying the appellants' petition for rehearing.

## ACTIONS ON REMAND

Consistent with our rulings above, the District Court shall on remand:

1. Permit the present Tribal Council to remain in office pending the adoption of a satisfactory reapportionment plan.

2. Permit the present Tribal Council and the parties participating in this appeal to submit plans for reapportioning the Reservation to the District Court at a date reasonably in advance of the next scheduled election—the third Thursday of April, 1974. It is contemplated by this Court that in developing a plan, amendments to the Constitution will be necessary to clarify voting and candidacy qualifications.[6] It would also be appropriate to incorporate provisions within the Constitution which would provide for periodic review of the apportionment of the Reservation and the machinery to effect necessary adjustments.

3. The apportionment plan, in substance, should be one which would divide the Tribe's population to comply with the general principle of population equality with due regard to other factors expressed by the Supreme Court in Mahan v. Howell, *supra,* and this Court in Melvin White Eagle, etc., et al. v. Philomene One Feather et al., *supra,* at 705. We are aware that with the small population involved, precise mathematical equality will be difficult to achieve, but that is the goal which the plan must be designed to attain. Any deviations from population equality must be justified in the record by legitimate tribal considerations. See, Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971).

Recognizing that there are practical difficulties associated with meeting the constitutional standards by either dividing the Reservation into equally-populated districts or electing the councilmen-at-large, we note that another permissible alternative would be a weighted voting plan under which each councilman would be accorded voting strength which would reflect the share of the population he represents.

4. Finally, we note that there is a responsibility on the part of the United States Government to provide prompt and appropriate aid to the parties in development of the data necessary to permit an acceptable plan to be adopted prior to the April 1974 election. To meet this date, it will also be necessary for the Bureau of Indian Affairs to act expeditiously if it is necessary to review any amendments to the Tribe's Constitution and By-Laws.

Costs of this appeal will be taxed to the United States Government.

Affirmed in part, reversed in part and remanded to the District Court for action consistent with this opinion.

---

6. If the parties wish to alter the manner of selecting a Tribal Chairman, they should also spell this out in an amendment.