Harold R. WHITE et al., Plaintiffs,

v.

TRIBAL COUNCIL, RED LAKE BAND OF CHIPPEWA INDIANS, et al., Defendants.

No. 6–74–Civ–187.

United States District Court, D. Minnesota, Sixth Division.

Nov. 8, 1974.

William E. Mullin, Mullin, Swirnoff & Weinberg, Minneapolis, Minn., for plaintiffs.

Rodney J. Edwards, Edwards, Edwards & Bodin, Duluth, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

In this Indian Civil Rights action involving internecine controversies among Chippewa Indians on the Red Lake Reservation, several motions pend including defendants' motion to dismiss for lack of jurisdiction.

Jurisdiction is alleged under the Indian Bill of Rights Act, 25 U.S.C. § 1302, 1303, and the Federal Jurisdictional Statute, 28 U.S.C. § 1343(4).

The allegations of the Complaint are numerous and detailed. Basically, plaintiffs, all of whom are members of the Red Lake Tribe, charge that the May 22, 1974 Tribal Council election was fraudulently handled, votes were obtained through bribery, intoxicated persons were permitted to vote, ballots were miscounted and some voters were improperly denied absentee ballots. Roger Jourdain, one of the defendants, is chairman of the Red Lake Tribal Council, and plaintiffs claim that he is, in effect, Dictator of the Red Lake Reservation and that he fraudulently manipulated the election machinery on the Reservation. Two plaintiffs, Adolph Barrett and Leon F. Cook, claim they were improperly denied office as duly elected representatives to the council from the Redby and Red Lake districts. Each claims he received more votes than his opponents and that under the election ordinance each should have been seated. They assert that Roger Jourdain and other defendants improperly denied them seating on the grounds that their election as representatives of their respective districts had to be by majority rather than by plurality vote. Plaintiffs also ask relief from claimed malapportionment of the election districts.

It is clear that a United States District Court has jurisdiction to determine, in a proper case, whether an Indian Tribe has denied to one of its members any of the rights given to the members by the Indian Bill of Rights. Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698 (8th Cir. 1972). The Indian Bill of Rights provides that no Indian Tribe in exercising the power of government shall:

" * * * deny to any person within its jurisdiction the equal protection

of its law or deprive any person of property without due process of law. * * * " 25 U.S.C. § 1302(8).

The Indian Bill of Rights Act was the result of several years of Congressional hearings and gave to the federal courts, for the first time, a broad power of intervention in tribal government and tribal courts. Prior to its enactment, civil liberties of Indians in relation to their tribal governments had been uncertain in view of the fact that tribal governments possessed a measure of quasi-sovereignty and were not directly subject to the Constitutional Bill of Rights. White Eagle v. One Feather, 478 F.2d 1311, 1313 (8th Cir. 1973). Senator Ervin, sponsor of the Act, in describing the bill said:

"* * * The reservation Indian now has no constitutional rights. The purpose of the amendment is to give these Indians constitutional rights which other Americans enjoy." 114 Cong.Rec. 5836.

■ The allegations made here, if true, are in derogation of the equal protection and due process rights of Indians of the Red Lake Reservation and would afford jurisdiction. Daly v. United States, 483 F.2d 700 (8th Cir. 1973).

But the defendants correctly assert that as a condition precedent to federal court jurisdiction in an Indian civil rights case, it must appear that there has been an exhaustion of all available remedies within the tribal government. O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140 (8th Cir. 1973). Here plaintiffs claim they sought relief by contesting the election before the General Election Board as provided for in the election ordinance, but the Board found plaintiffs' protest to be "without merit." Plaintiffs claim that the General Election Board is controlled and dominated by Roger Jourdain. Plaintiffs also claim to have attempted to resolve the dispute through proposals directed to the defendant Tribal Council, but assert the Tribal Council is so dominated by Roger Jourdain and associates subject to his direction that it was futile to pursue such recourse.

Defendants also urge that further tribal remedies were and are available to plaintiffs through the Tribal Court of Indian Offenses established by Chapter 4 of the Tribal Code. The Tribal Code gives the court "* * * jurisdiction of *all* suits wherein the defendant is an Indian residing on the Red Lake Reservation." Plaintiffs did not resort to the Tribal Courts for relief, claiming Roger Jourdain appointed and controls the judges. Certainly plaintiffs bringing suit under the Indian Bill of Rights are not required to first exhaust futile or inadequate tribal remedies. *See* Daly v. United States, *supra*, and McCurdy v. Steele, 353 F.Supp. 629 (D.C. Utah 1973). The exhaustion requirement is not inflexible and its application depends in part upon a balancing process of weighing the need for tribal responsibility against the need to immediately adjudicate claimed deprivations of constitutional rights. O'Neal v. Cheyenne River Sioux Tribe, *supra*.

So the basic immediate decision is whether the tribal government first should be afforded the opportunity to assume and discharge tribal responsibility as to the claims alleged. I think it should be. It does not appear that plaintiffs have resorted to all available and non-futile tribal remedies. The Tribal Court should have an opportunity to pass on the issues.

The claim that the tribal judges lack independence and were appointed and are controlled by Roger Jourdain has not been shown. The former Chief Judge of the Court, Louis F. Stately, was removed from office by the Red Lake Tribal Council by a vote of eight to one (Resolution 77–73) but this action was occasioned by complaint of Celestine P. Maus, Superintendent of the Red Lake Agency, that Chief Judge Stately was failing to perform the duties of the office. A backlog of 327 untried cases had accumulated on the court's calendar. Many other complaints were made, against him.

Andrew Segana was appointed Chief Judge, not by Jourdain, but by a unanimous vote of the Tribal Council on June 29, 1973 (Resolution 102–73). He is now acting in that capacity along with two associate judges and a full-time juvenile judge. There is no reason to believe that these judges are not competent and would not act fairly in disposing of matters brought before them. Chief Judge Segana, while a layman, has attended judges' training sessions sponsored by the United States Bureau of Indian Affairs.

A principal issue for immediate consideration is the need for a run-off election for representatives from the Redby and Red Lake districts. This necessitates a determination as to whether the Constitution, Article V, Section 1, requiring a *majority* vote, or the Constitution, Article V, Section 7(a), and Election Ordinance 2–74 and Council Resolution 31–74 apparently requiring only a *plurality* vote, controls. The tribal court should be qualified to rule on this issue.

Another issue is as to the claimed malapportionment of election districts. But the Red Lake Tribal Council has not been requested to reapportion nor has it had an opportunity to do so if, indeed, reapportionment is required. Resort to the Council and to the Tribal Court for this relief precedent to federal court action is in order. Brown v. United States, 486 F.2d 658, 661 (8th Cir. 1973). The Tribal Courts should also be given the opportunity to decide the fraudulent election claim and all claims of plaintiffs.

The plea of the American Indian is that he be permitted self-government. The Court answers that here is the opportunity for the Red Lake Band of Chippewa Indians to assume that responsibility and to fairly hear and justly decide these claims of their fellow American Indians within the framework of their tribal government.

The Complaint is dismissed, without prejudice.