**Geraldine JANIS et al., Appellants,**

v.

**Dick WILSON et al., Appellees.**

**No. 75–1158.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1975.

Decided Aug. 13, 1975.

725

Robert J. Doyle, Cambridge, Mass., for appellants.

Dennis H. Hill, Rapid City, S. D., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

On April 5, 1973, the Executive Committee of the Oglala Sioux Tribe, Pine Ridge Indian Reservation, South Dakota, unanimously terminated the employment of the appellants, non-probationary em-

ployees of the Community Health Representative Program (CHR). The appellants, Geraldine Janis, Della Starr, Minerva Walks Out and Victoria Wounded Foot, were members of the Tribe and residents of the reservation. They were also members of a tribal civil rights organization critical of the tribal government.

The CHR was operated and funded by the Tribe, and its employees were governed by Tribal Merit Service Ordinance 71–05. The stated reason for terminating the appellants' employment was:

> * * * These persons, by public demonstrations, advocated the over throw [sic] of the Tribal Government and the Executive Committee feels that these persons are not drawing salary from the CHR Program for such actions during regular working hours.

Notice of the termination was received by the appellants on April 9, 1973. Accompanying the notices was an *ex parte* order issued by the Oglala Sioux Tribal Court directing them to vacate the CHR offices. An appeal to the Personnel Evaluation Committee of the Tribe was unsuccessful. This suit followed.

The appellants' complaint, filed against the Oglala Sioux Tribe and the members of the Executive Committee, both individually and in their official capacity, alleged that the terminations were in deprivation of their right to free speech and association and to due process. The claims were premised on the First and Fifth Amendments to the Constitution and the Indian Civil Rights Act, 25 U.S.C. § 1302(1) and (8). They sought: (1) reinstatement to tribal employment; (2) expungement from their personnel files of the record of discharge, and a permanent injunction enjoining the appellees from using the discharge against them in the future; (3) back wages from the date of termina-

tion; (4) $5,000 each for emotional and psychological damage; (5) $15,000 each in punitive damages; and (6) attorneys fees and costs.

■ The District Court denied the claims on the appellees' motion for summary judgment. It found that: (1) the First and Fifth Amendments to the Constitution do not limit the exercise of tribal governmental powers;[1] (2) a pretermination hearing is not required under the due process provision of the Indian Civil Rights Act, 25 U.S.C. § 1302(8), and the appellants were afforded a post-termination hearing; and (3) the appellants' termination did not violate the free speech and association provision of the Indian Civil Rights Act, 25 U.S.C. § 1302(1), because their participation in political demonstrations occurred during working hours and constituted partisan political activity in violation of the Tribal Merit Service Ordinance.

The appeal challenges the legal and factual basis of each of the District Court's findings. We, however, refrain from reaching the merits because the appellants have failed to show that they have exhausted their tribal remedies and remand the cause to the District Court.

■ Jurisdiction over claims presented under the Indian Civil Rights Act is conferred upon the federal courts by 28 U.S.C. § 1343(4). *Luxon v. Rosebud Sioux Tribe of South Dakota,* 455 F.2d 698, 700 (8th Cir. 1972) (per curiam). *Accord, Daly v. United States,* 483 F.2d 700 (8th Cir. 1973); *White Eagle v. One Feather,* 478 F.2d 1311 (8th Cir. 1973) (per curiam); *Johnson v. Lower Elwha Tribal Community, Etc., Wash.,* 484 F.2d 200 (9th Cir. 1973). The invocation of this power necessary for the efficacy of the Indian Civil Rights Act is, however, ordinarily conditioned on the exhaustion of tribal remedies, both administrative

---

1. The claims brought under the First and Fifth Amendments were properly dismissed. The United States Constitution does not limit the powers of tribal government. *Talton v. Mayes,* 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); *Wounded Head v. Tribal Council of Oglala Sioux Tribe,* 507 F.2d 1079 (8th Cir. 1975); *Barta v. Oglala Sioux Tribe of Pine Ridge Reservation,* 259 F.2d 553 (8th Cir. 1958), *cert. denied,* 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959).

and judicial. *O'Neal v. Cheyenne River Sioux Tribe,* 482 F.2d 1140 (8th Cir. 1973). *See United States Ex Rel. Cobell v. Cobell,* 503 F.2d 790 (9th Cir. 1974) (exhaustion normally required in habeas corpus proceeding from tribal court). Exhaustion is required as a matter of comity in furtherance of the federal policy to preserve the unique sovereign and cultural identity of the Indian people. But it is not an inflexible requirement blind to the facts of each case.

> * * * A balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights. * * *

*O'Neal v. Cheyenne River Sioux Tribe, supra* at 1146.

The appellants concede their failure to exhaust all tribal remedies but contend that any further exhaustion would be futile and should not be demanded.

■ Further resort to tribal administrative remedies is not required. Each appellant properly appealed her termination to the Oglala Sioux Tribal Evaluation Committee which met on May 22, 1973. Appellants Janis and Walks Out were present with counsel. Appellants Starr and Wounded Foot were not present, for they were arraigned the same day on federal charges in federal court. Their written requests for a continuance were denied for being out of time. The Evaluation Committee said:

> It was decided by the Evaluation Committee that in this particular case, the Committee would disqualify themselves from any appeals pertaining to their nature or case. It was further

decided that the Evaluation Committee uphold the decision of the Executive Board pertaining to the termination of these former Community Health Representative employees, but if any further appeals by CHR personnel were requested, the Executive Board should handle these appeals.

Clearly, Janis and Walks Out exhausted their administrative remedies. It is also clear from the Evaluation Committee's statement that Starr and Wounded Foot had no meaningful administrative remedy available.[2]

The record, as developed, does not show that tribal judicial relief is unavailable. The appellants explain their failure to present their claims to the Tribal Court[3] on the ground that to do so would be futile. They contend that: (1) the Tribal Court has no appellate jurisdiction to review the actions of the Evaluation Committee; (2) an original action cannot provide meaningful relief because the Tribal Court has no jurisdiction over the Tribe; and (3) the Tribal Court will not render a fair decision because it is subservient to the Executive Committee.

■ Merit Service Ordinance 71–05, Article XIII, Section 1, states, in part, that the Evaluation Committee's decision with respect to an appeal is final. The appellees contend that the word "final" does not foreclose tribal judicial review and cite by analogy *Breen v. Selective Service System Local Board No. 16,* 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); *Oestereich v. Selective Service System Local Board No. 11,* 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); and *Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). No evi-

---

**2.** Contrary to the appellees' contention, appellants Starr and Wounded Foot did not intentionally waive tribal administrative review. Through counsel, they continued to press their claims to the tribal committee to the time they brought federal suit. The District Court found that the Evaluation Committee considered its decision binding on all of the appellants.

**3.** The Tribal Court has the power, in civil actions, to issue judgments which

* * * consist of an order of the court awarding money damages to be paid to the injured party, or directing the surrender of certain property to the injured party, or the performance of some other act for the benefit of the injured party.

Revised Code of the Oglala Sioux Tribe, Section 22.

dence of the Tribal Court's construction of this provision was introduced.[4] The appellants have failed to show that tribal appellant relief is unavailable. The construction of the tribal ordinance is, in the first instance, for the Tribal Court. See O'Neal v. Cheyenne River Sioux Tribe, supra at 1148.

For like reason, we cannot say, on the basis of this record, that an original action in Tribal Court is foreclosed for failure of jurisdiction over the Tribe.[5] Article V, Section 2, of the Oglala Sioux Tribe's Constitution and By-Laws reads:

> The judicial power shall extend to all cases involving only members of the Oglala Sioux Tribe, arising under the constitution and by-laws or ordinances of the tribe, and to other cases in which all parties consent to jurisdiction.

Section 20 of the Tribe's Revised Code reads:

> The Oglala Sioux Tribal Court shall have jurisdiction of all suits wherein the defendant is a member of the tribe or tribes within their jurisdiction, and of all other suits between members and nonmembers which are brought before the court by stipulation of both parties. * * *

Whether the Tribal Court can hear only cases involving individuals, as the appellants contend, is from the face of the applicable tribal law unclear. Again, no tribal judicial construction of the law was introduced into evidence.

Finally, on the record presented, we cannot say that the judges of the Tribal Court will not act independently of the Executive Committee. See O'Neal v. Cheyenne River Sioux Tribe, supra at 1147.

The record shows that the tribal judges are appointed by the Tribal Council and can be removed for "just cause" upon a two-thirds vote of its membership. REVISED CODE OF THE OGLALA SIOUX TRIBE, Sections 2.2 and 2.7. It does not show that the Executive Committee controls its parent body.[6] Further, without proof in the record, we cannot infer that the bitter political disputes currently inflaming the Pine Ridge Reservation, of which we take judicial notice, have corrupted the tribal judges to the prejudice of the appellants.[7]

Moreover, we are not firmly convinced by the appellants' argument that the Tribal Court's ex parte order of April 9, 1973, directing them to return CHR property and vacate the offices, necessarily evidences a prejudgment of the case. The order on its face provided that "any person or persons may show cause why this Court order should not stand as committed."

While the appellants have not yet shown that resort to the Tribal Court would be futile, it is far from clear that effective relief is available. This uncertain state of the record is attributed to the fact that the appellees' motion to dismiss for failure to exhaust tribal remedies was denied as a matter of law without benefit of a factual record;[8] a

---

4. Indeed, the provision may not be applicable. On its face, it speaks only of appeals from rejection of application and does not address appeals from termination of employment. The parties assume that the provision would nevertheless be applied.

5. The appellees have taken the position that the Tribe is an indispensible party to the action within the meaning of Federal Rule of Civil Procedure 19.

6. The Executive Committee acts on behalf of the Tribal Council when the latter is not in session and has charge of all routine matters which may arise during the recess. The Tribal Council meets in regular session four times each year. BY-LAWS OF THE OGLALA SIOUX TRIBE OF THE PINE RIDGE RESERVATION, Article I, Section 5 and Article V.

7. The possibility that the tribal judges will not act independently is real for they can be suspended from office by the Executive Committee, after investigation and hearing, when the Tribal Council is not in session. Revised Code of the Oglala Sioux Tribe, Section 2.7. Nothing in the record, however, raises this possibility above speculation.

8. The District Court denied the appellees' pretrial motion made pursuant to Federal Rule of Civil Procedure 12(b) without opinion. Its de-

record not later developed because of the granting of summary judgment. It was error for the District Court to have reached the merits of the case without first determining that the exhaustion requirement had been met. Accordingly, we remand for that purpose.

■ On remand, the appellants must have an opportunity to prove that resort to the tribal judiciary is futile. *See Brown v. United States,* 486 F.2d 658, 661 (8th Cir. 1973). *Cf., Johnson v. Robinson,* 509 F.2d 395, 398 (D.C.Cir.1974); *United States Ex Rel. Sero v. Preiser,* 506 F.2d 1115, 1130 (2nd Cir. 1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975). If the controversy between the parties cannot be resolved at the tribal level, the purposes of the exhaustion requirement will not be served and the District Court shall retain jurisdiction of the cause. We will then, on application of the parties, decide the substantive issues presented on the basis of the existing record, briefs and argument. The need for promptness is evident. The resolution of the case must proceed with all deliberate speed.

Should the proof show that prompt tribal judicial relief is available, the District Court shall dismiss the complaint without prejudice. If the Tribal Court fails to act promptly on the matter or fails to grant the appellants' requested relief, they may again present their claims to the District Court. That court may adhere to its original decision or reconsider the matter in the light of the additional proceedings. Upon the filing of a new notice of appeal requesting accelerated consideration, we will decide the issues presented on the basis of the existing briefs and argument and supplemented record. *See O'Neal v. Cheyenne River Sioux Tribe, supra* at 1148.

■ While we have serious reservations about the correctness of the summary judgment,[9] we refrain from reaching the merits of the case in deference to the Tribal Court and in furtherance of the federal policy of strengthening tribal government. In the event the appellants are required to exhaust their tribal judicial remedies, the Tribal Court should be able to consider the cause with an open mind.

nial of the motion was proper because the pleadings presented issues of material fact. *See Roemhild v. Jones,* 239 F.2d 492 (8th Cir. 1957).

9. Summary judgment is appropriate only in the extreme case when, viewing the evidence in the light most favorable to the non-moving party, there is no material issue of fact. *See Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Ailshire v. Darnell,* 508 F.2d 526, 528 (8th Cir. 1974); *Williams v. Chick,* 373 F.2d 330, 331 (8th Cir. 1967). The court cannot weigh the evidence presented and adopt one version as true. *See Taggert v. Wadleigh-Maurice, Ltd.,* 489 F.2d 434 (3rd Cir. 1973), *cert. denied,* 417 U.S. 937, 94 S.Ct. 2653, 41 L.Ed.2d 241 (1975).

The appellants' claims under the Indian Civil Rights Act are substantial and require a delicate balancing of the individual and tribal interests affected. *See Wounded Head v. Tribal Council of Oglala Sioux Tribe, supra; White Eagle v. One Feather,* 478 F.2d 1311 (8th Cir. 1973) (per curiam); Comment, The Indian Bill Of Rights And The Constitutional Status Of Tribal Government, 82 Harv.L.Rev. 1343 (1969).

The District Court's analysis of the due process claims brought under 25 U.S.C. § 1302(8), made in reliance on *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633; 40 L.Ed.2d 15 (1974), appears misguided. Mr. Justice Rehnquist's plurality opinion, joined by Chief Justice Burger and Mr. Justice Stewart, which held that the statute conferring the expectancy of continued employment could also determine the procedure by which it would be terminated was rejected by six members of the Court. *Id.* at 167, 185, 211, 94 S.Ct. 1633. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Johnson v. Lower Elwha Tribal Community, Etc., Wash.,* 484 F.2d 200 (9th Cir. 1973).

The free speech and association claims brought under 25 U.S.C. § 1302(1) raise questions regarding the scope of the tribal ordinance prohibiting "partisan political activity" and the factual nature of the appellants' conduct. *See CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Peale v. United States,* 325 F.Supp. 193 (N.D.Ill.1971).

The cause is remanded to the District Court for further proceedings consistent with this opinion.