**ROSEBUD SIOUX TRIBE OF SOUTH
DAKOTA et al., Appellants,**

v.

**Ed DRIVING HAWK et al., Appellees.**

No. 76–1077.

United States Court of Appeals,
Eighth Circuit.

Submitted and Order of Affirmance
Filed Feb. 10, 1976.

Opinion March 5, 1976.

Mario Gonzalez, Martin, S. D., made argument for appellants and filed supplemen-

tal brief (typewritten) for appellants. Russell Potter, San Francisco, Cal., was co-counsel.

Dennis H. Hill, Costello, Porter, Hill, Nelson, Hesiterkamp & Bushnell, Rapid City, S. D., made argument for appellees and filed typewritten brief for appellees.

Before GIBSON, Chief Judge, MATTHES, Senior Circuit Judge, and BRIGHT, Circuit Judge.

GIBSON, Chief Judge.

This case involves an election dispute among members of the Rosebud Sioux Tribe of South Dakota.[1] Appellants, the Rosebud Sioux Tribe of South Dakota, Robert Burnette, in his official capacity as President of the Rosebud Sioux Tribe, and five members of the Rosebud Sioux Tribal Election Board, appeal a judgment of the District Court[2] ordering the Secretary of the Rosebud Sioux Tribe to issue a certificate of election to those candidates who were determined by the Election Board as having secured the most votes in the Tribe's general election, with the exception of the candidates for the tribal council in two communities.

We summarize the facts briefly. On October 23, 1975, a general election was held for the election of officers and members of the Tribal Council of the Rosebud Sioux Tribe of South Dakota. According to the unofficial tribal count, appellee Ed Driving Hawk defeated appellant Robert Burnette, the incumbent president, by a vote of 1109 to 1061; of the 32 incumbent members of the Tribal Council, eight were reelected. The election had been hotly contested.

Pursuant to tribal ordinance, the Tribal Election Board was required to certify the results of the election within three days of the election. Prior to the expiration of this three day period, Driving Hawk was conditionally sworn in as president pending certification of the results by the Board, and began to exercise some of the functions of president of the Tribe. However, the Board determined that because of certain irregularities it would recommend a new general election, and therefore made no certification of the election results.

Appellants filed a complaint on October 27, 1975, in the district court naming Driving Hawk and several other individuals as defendants and seeking injunctive relief restraining the defendants from interfering with them in the exercise of their official duties. They alleged jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361 and 1362 (1970). On October 29, 1975, the Tribal Council, at the direction of Burnette, met and passed a resolution declaring Driving Hawk guilty of certain illegal activities stemming from his exercise of the powers of president. The Tribal Council also appointed Burnette to investigate these activities and vested Burnette and the Secretary of the Tribe with subpoena power and power to imprison persons for up to sixty days for contempt. On October 31, 1975, the Tribal Election Board filed a report with the Tribal Council which recommended a reelection and found that Driving Hawk had violated the Tribe's election ordinance. The council by resolution adopted the Board's report.

Thereafter, Driving Hawk and John King, two of the named defendants in the action brought by appellants, filed an answer to the complaint and a counterclaim. In one count of their counterclaim, predicated upon § 202 of the Indian Civil Rights Act, 25 U.S.C. § 1302 (1970), they asserted that the Tribe and the Election Board had denied them due process of law and equal protection of the laws in attempting to disenfranchise them as voters and to termi-

1. This opinion supplements our Order of Affirmance filed on February 10, 1976.

2. The Honorable Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

nate Driving Hawk's right to hold elective office, and in finding Driving Hawk guilty of certain offenses without giving him notice and an opportunity to defend himself. In a second count, Driving Hawk and King asserted that Burnette and the members of the Election Board had conspired to deprive them of their right to vote and to hold elected office, in violation of 42 U.S.C. § 1985(3) (1970).

The District Court, after hearing evidence introduced by the principal parties, ordered the Tribal Election Board to count the ballots and to certify and post the election results, ordered that all contests to the election results be filed with the District Court, and, pursuant to Fed.R. Civ.P. 53, appointed a special master, a member of the tribe, to hear evidence with respect to each election dispute and to make recommendations as to the validity of the election results. Election contests were duly filed, and the special master proceeded to hold hearings with respect to each contest. Subsequently, the special master filed proposed findings of fact to the effect that, with respect to the results of the presidential race and the races for Tribal Council in all but two of the communities, the election irregularities that did exist were technical in nature and did not affect the results of the tally. The master recommended that in view of § 26 of the Tribe's election ordinance,[3] providing that mere technicalities should not invalidate an election, the election results should be upheld. The District Court thereupon entered a final order dismissing the complaint for lack of jurisdiction, denying appellants' motion to dismiss the counterclaim for lack of jurisdiction, adopting the special master's proposed findings of fact and conclusions of law, and ordering the Secretary of the Tribe to issue a certificate of election to each candidate, with the exception of the candidates for the Tribal Council in two communities.

Appellants raise two contentions on appeal: (1) that the issues raised by appellees in their counterclaim were not ripe for review because appellees had failed to pursue their tribal remedies, and (2) that the District Court had no jurisdiction under 42 U.S.C. § 1985(3). For reasons stated hereafter we affirm the decision of the District Court.

■■■ With respect to appellants' exhaustion argument, we note at the outset that we have previously imposed a general exhaustion requirement in cases arising under the Indian Civil Rights Act, 25 U.S.C. § 1301 et seq. *Janis v. Wilson*, 521 F.2d 724 (8th Cir. 1975); *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973); *Luxon v. Rosebud Sioux Tribe*, 455 F.2d 698 (8th Cir. 1972). The purpose of this exhaustion requirement is to foster tribal self-government and cultural identity; the federal courts should infringe as little as possible upon the authority of an Indian tribe to govern itself. *Wounded Head v. Tribal Council of Oglala Sioux Tribe*, 507 F.2d 1079 (8th Cir. 1975); *McCurdy v. Steele*, 506 F.2d 653 (10th Cir. 1974); *O'Neal v. Cheyenne River Sioux Tribe, supra*. This court has held that where an Indian tribe has adopted traditional democratic processes for selection of tribal representatives, the tribe may not deny a tribal member equal protection of the law by intentionally interfering with that member's right to vote as granted by the tribe. *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975). However, the proper method of vindicating the right to vote is to seek tribal administrative and judicial remedies first, and to resort to the federal courts only if those remedies fail. We wish to emphasize that it is incumbent upon each Indian tribe to establish a system whereby election contests can be fairly tried and fairly resolved in compliance with the guarantees of equal protection and due process of law established by the Indian Civil Rights Act. The federal courts should not

**3.** Ordinance RB 75–05, § 26 provides:
This Ordinance is intended to establish procedures to insure fair elections. This Ordinance shall be interpreted liberally to accomplish such intent. Substantial compliance shall satisfy this Ordinance. Technicalities shall not be used to interfere, delay or block elections, or to cause confusion, or the loss of confidence in the election system.

be called upon to supervise and decide a multitude of issues raised in tribal elections.

 Appellees do not take issue with the fact that they have failed to exhaust their tribal remedies and ordinarily we would require that they do so before seeking relief here. However, exhaustion of tribal remedies is not an iron-clad requirement. As we stated in *O'Neal v. Cheyenne River Sioux Tribe, supra* at 1148:

> A general exhaustion requirement * * will do much to strengthen tribal governments, including tribal courts, and, thereby aid the reservation Indian in maintaining a distinct cultural identity. However, each case will require a balancing of the merits of exhaustion against the harm an exhaustion requirement might threaten with regard to those who claim their constitutional rights have been violated.

Because of the exceptional circumstances of this case, we agree with the District Court for the reasons stated in its memorandum opinion that to require the appellees to resort to tribal remedies would be a futile gesture and would cause irreparable harm. There is sufficient evidence in the record to support the District Court's conclusion that appellees could not receive a fair hearing from the Tribal Council and the Election Board and that the Tribal Council was the supreme judicial authority. We feel that exhaustion need not be required under the facts of this case, particularly since both sides initially asked the federal courts to entertain jurisdiction over certain aspects of this election controversy. Appellants have taken a rather anomalous position by instituting an action in the federal courts and thereafter urging that the action should not be maintained because of the failure to exhaust tribal remedies. We think that the initial acquiescence by all parties to federal court jurisdiction is one factor to be considered in balancing whether or not the litigants possess timely and effective tribal remedies. *Cf. Means v. Wilson, supra* at 837; *O'Neal v. Cheyenne River Sioux Tribe, supra* at 1146–47. We hold that, based upon the totality of facts in this case, the District Court, having subject matter jurisdiction, properly entertained this action despite non-exhaustion of administrative and tribal remedies.

 Appellants also contend that the District Court erred in finding subject matter jurisdiction under 42 U.S.C. § 1985(3) because appellees made no showing either that appellants engaged in a conspiracy or that appellants were motivated by an illegal invidiously discriminatory animus toward the Driving Hawk supporters. We need not determine whether the District Court's holding that the counterclaim stated a claim for relief under 42 U.S.C. § 1985(3) was correct. The District Court made no finding of conspiracy on the part of the individual counterclaim defendants, but granted relief only as to the claim under 25 U.S.C. § 1302. Therefore, any error by the District Court in holding that appellees stated a claim under 42 U.S.C. § 1985(3) would be harmless. *See Means v. Wilson, supra* at 842.

We have carefully reviewed the original record of the District Court, including the transcripts of the hearings before the court and before the special master, and are satisfied that the election dispute has been fairly resolved.

The judgment of the District Court is affirmed.