Delbert **POMANI** et al.

v.

**CROW CREEK SIOUX TRIBE** et al.

No. CIV76–3020.

United States District Court,
D. South Dakota.

Aug. 5, 1976.

Gary E. Davis, Gregory, S. D., for plaintiffs.

David Bergren, Fort Pierre, S. D., William F. Clayton, U. S. Atty., Sioux Falls, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

In 1949, the Crow Creek Sioux Tribe of Fort Thompson, South Dakota, approved and adopted a Constitution and By-Laws. This document divided the Crow Creek Reservation into three districts: Big Bend, Fort Thompson and Crow Creek. The Tribe's governing body is the Tribal Council, which under Article III § 2 of the 1949 Constitution (as amended through 1963) was composed of six members, two of whom were elected from each of the Reservation's three districts. Under § 3 of Article III, one Council member from each district was required to be of at least one-half Indian blood. *See also* para. 4, § 4, Article III of the *1949 Constitution.* Under § 4 of Article III, the six-member council was to elect one of its members to serve as Council Chairman.

In 1972, a lawsuit encaptioned *Daly, et al. vs. United States, et al.* (CIV72–3005) was commenced in this Court, which challenged the Tribe's apportionment of representation by District on the Tribal Council. The facts surrounding the Daly lawsuit are set out in *Daly v. United States,* 483 F.2d 700 (8th Cir. 1973), and reference is made to that opinion for much of the background involved in the instant litigation. The Eighth Circuit Court of Appeals opinion in *Daly, Id.,* was issued August 23, 1973, and remanded the case to this Court for further consideration with a goal of encouraging the parties to assist the Court in adopting an apportionment plan prior to the next scheduled tribal election in April of 1974. On March 28, 1974, this Court issued its decision on remand. In its March 28, 1974 decision, this Court, after considering the plans submitted by the parties, ordered that the Tribal Constitution be amended to provide that the Tribal Chairman be elected at large by all three Districts. While the 1949 District boundaries were retained, the Constitution was ordered amended to provide that the six council members be elected as follows: one from Big Bend, one from Crow Creek and four from Fort Thompson. This Court's order amended Article III to require weighted voting on the Council to ensure proportionate representation. The original Constitution's requirement that one council member from each District be of one-half Indian blood was amended to require that each of the six Council members, as well as the Tribal Chairman, be of at least one-fourth Indian blood. Other amendments ordered by this Court included provisions that each Council member and the Chairman serve for two-year terms, with elections to be held biennially on the third Tuesday in April.

This Court's order of March 28, 1974, concluded with the following language:

This Court hopes that following the April 1974 election that the tribal council will submit the various reapportionment plans suggested to the people by means of the special election process established in the Constitution and Bylaws of the Crow Creek Sioux Tribe. This same suggestion applies to the other sections amended such as the blood quantum requirement and staggered terms of office sections.

This Court orders the Bureau of Indian Affairs to act expeditiously to review the necessary amendments to the Tribe's Constitution and Bylaws.

The above-quoted language was in implementation of the admonition of the Eighth Circuit Court of Appeals in remanding the case for the development of a reapportionment plan in time for the April, 1974 election. The Court of Appeals in *Daly* stated:

It is contemplated by this Court that in developing a plan, amendments to the Constitution will be necessary to clarify voting and candidacy qualifications. It would also be appropriate to incorporate provisions within the Constitution which would provide for periodic review of the apportionment of the Reservation and the

machinery to effect necessary adjustments.

\* \* \* \* \* \*

Finally, we note that there is a responsibility on the part of the United States Government to provide prompt and appropriate aid to the parties in development of the data necessary to permit an acceptable plan to be adopted prior to the April 1974 election. To meet this date, it will also be necessary for the Bureau of Indian Affairs to act expeditiously if it is necessary to review any amendments to the Tribe's Constitution and By-Laws.

The April, 1974 election was conducted under the Tribal Constitution as amended by this Court's order of March 28, 1974.

Soon after the April, 1974 election, the Tribal Council appointed a committee of four persons to begin revision of the Constitution and Bylaws. Although the four appointed were members of the Tribe, they were not members of the Tribal Council. A series of meetings then took place on the subject of revision. The meetings were attended by the Tribal Chairman and Council, the Constitutional revision committee, area and local Bureau of Indian Affairs officials and advisors, and the Tribal attorney. When the Committee had arrived at specific recommendations, the Tribal Chairman presented them to the Council, and the Council in turn directed the Chairman to present the recommendations to the Tribal attorney for examination in light of developments in the area of civil rights law.

The suggested revisions were presented to the Tribal members at District meetings held within the three reservation districts. In April of 1975, a general meeting was held at the Tribal office. Notice of the April, 1975 general meeting was posted at various places throughout the reservation, and a significant number of Tribal members attended. Most of the day was spent in general discussion of the proposed revisions. The Tribal Council, as well as area officials from the Bureau of Indian Affairs, attended the general meeting held in April of 1975.

In November of 1975, after the Tribal Attorney had examined the Constitution, and after the general meeting had been held, the Tribal Chairman again presented the proposed revisions to the Tribal Council. The proposed revisions then were transmitted to the Crow Creek Agency office of the Bureau of Indian Affairs, and from there to the Aberdeen, South Dakota, area office of the Bureau of Indian Affairs. In December of 1975 the proposed revisions were sent to the central office of the Bureau of Indian Affairs in Washington, D. C. Approval of the Bureau of Indian Affairs is necessary before amendments to the Tribal Constitution may be submitted to the Tribal members for adoption through election. *Article X Of Constitution and Bylaws of the Crow Creek Sioux Tribe.*

The Tribal Chairman then began calling the Bureau of Indian Affairs to ascertain whether the Bureau had completed its examination of the proposed revisions. No action had been taken by February of 1976, and the Tribal Chairman then asked the Tribal Attorney to see what could be done in the way of encouraging the Bureau of Indian Affairs to act expeditiously. Soon thereafter, the Tribal Chairman and Tribal Attorney flew to Washington, D. C. and went over the proposed revisions with an attorney from the Bureau of Indian Affairs. They were assured upon their departure that they would soon receive Bureau approval. About a week after their return, they received a lengthy telegram setting out discrepancies which the Bureau of Indian Affairs had found in the proposed revisions. The Tribal Chairman immediately called a Tribal Council meeting to review the findings of the Bureau of Indian Affairs with the assistance of the Aberdeen Area Office. A Council resolution accepting the recommendations of the Bureau of Indian Affairs was passed and once again the proposed revisions were forwarded to Washington, D. C.

Ultimately the Commissioner of Indian Affairs, as is his duty under Article X of the Tribal Constitution, scheduled an election for April.15 of 1976, at which time the

final proposed revisions would be submitted to the members of the Tribe. The Constitutional election was scheduled on the same day as the Tribal elections for Council members and Chairman. The election of Tribal officers was conducted under the provisions of this Court's order of March 28, 1974. Although the two elections were held on the same day, they were conducted separately. A separate election chairman was appointed for each of the two elections, and each election was supervised by the Bureau of Indian Affairs. The proposed revisions to the Tribal Constitution were defeated.

Although the proposed revisions were not offered into evidence, testimony received at the hearing on the preliminary and permanent injunction indicated that the amendments ordered by this Court on March 28, 1974 were substantially incorporated into the proposed Constitutional revisions which were submitted to the Tribe on April 15, 1976. The testimony further indicated, however, that the remainder of the proposed revisions were a substantial overhaul of the Tribe's 1949 Constitution.

The Complaint in the instant case was filed April 5, 1976. It alleged that the continued use of the election plan ordered by this Court on March 28, 1974, and the failure of the Defendants to more promptly enact Constitutional amendments through the Constitutional amendment process found in Article X violated the mandate of the Eighth Circuit Court of Appeals in *Daly v. United States*, 483 F.2d 700 (8th Cir. 1973), the order of this Court of March 28, 1974, and Plaintiffs' rights under 25 U.S.C. § 1302(8). Although the Complaint also challenged the apportionment of representation on the Tribal Council, this challenge was withdrawn by Plaintiffs' counsel at the hearing except insofar as the Complaint challenged the weighted vote system as an improper remedy for malapportionment. Thus two issues are now before this Court: (1) whether the failure to have properly approved and adopted Constitutional amendments in advance of the April 15, 1976 election of Tribal officers violated any of Plaintiffs' rights, and (2) whether, in this case, a weighted vote system on the Tribal Council is a proper remedy to correct malapportionment. The Tribal Defendants moved for summary judgment, and the hearing on this motion was consolidated with the hearing on the question of both preliminary and permanent injunctive relief. Plaintiffs' application for a Temporary Restraining Order to enjoin the April 15, 1976 election had previously been denied by this Court. Subject-matter jurisdiction over this action exists by virtue of 25 U.S.C. § 1302 and 28 U.S.C. § 1343(4).

I. DELAY IN THE AMENDMENT PROCESS

A. VIOLATION OF COURT ORDERS IN DALY CASE.

█ At the outset, it is important to reiterate that Plaintiffs do not directly challenge the apportionment of representation on the Tribal Council. Additionally, because the particular allegations of failure to abide by the *Daly* opinions are not, strictly speaking, claims under 25 U.S.C. § 1302, this Court has concluded that exhaustion need not be required as to these claims only.

Upon careful review of the opinion of the Eighth Circuit Court of Appeals opinion in *Daly v. United States*, 483 F.2d 700 (8th Cir. 1973), and this Court's Order of March 28, 1974, this Court is of the opinion that Plaintiffs have failed to state a claim by their allegations that certain orders in the *Daly* case were violated. Specifically, the relevant operative language in both of those documents, quoted above at pages 3 and 4, is in the nature of a recommendation at most. The Court of Appeals merely contemplated that amendments would be necessary for purposes of clarification, and this Court, in implementation of the Court of Appeals opinion, merely expressed a hope that reapportionment and blood quantum amendments might be presented to the people prior to the next election following the April, 1974 election. The Crow Creek Sioux Tribal Council has acted in good faith and with reasonable diligence in carrying out these "contemplations" and "hopes". The situation here is markedly different from

that involving a willful failure to obey a precisely drawn court order, particularly in view of the dangers inherent in undue judicial interference with a Tribe's governing processes. The judicial admonitions in the *Daly* case were drawn with care to prevent such undue interference by the federal courts. The testimony of the Tribal Chairman demonstrated the difficulty in obtaining approval of a constitution drawn in compliance with federally-imposed requirements from a people who often resent the erosion of tribal sovereignty. This Court is unwilling to further burden the Tribe by stretching the language used in the *Daly* opinions to imply an order to have amendments ratified by a date certain. The relief sought by Plaintiffs of setting aside the 1976 Council elections, could only further hamper and delay the amendment process.

In summary, this Court finds that the conduct of the Council does not amount to a violation of any "Orders" entered in the *Daly* case.

### B. VIOLATION OF 25 U.S.C. § 1302(8)

■ Plaintiffs have also alleged that the failure to have proposed and adopted constitutional amendments in time for the 1976 elections violated their due process rights under the Indian Civil Rights Act, 25 U.S.C. § 1302(8). No allegation is made that Plaintiffs have exhausted their available tribal remedies or that exhaustion would be futile. For reasons that follow, this Court has concluded that the complaint should be dismissed without prejudice for failure to exhaust tribal remedies. *Janis v. Wilson*, 521 F.2d 724 (8th Cir. 1975). *Compare Rosebud Sioux Tribe v. Driving Hawk*, 534 F.2d 98, 101 (8th Cir. 1976).

■ The case of *Rosebud Sioux Tribe v. Driving Hawk, supra*, provides the most recent guidance for determining when the admittedly flexible requirement of exhaustion of tribal remedies should be invoked. In that case, the Eighth Circuit Court of Appeals declined to require exhaustion where there was

> . . . sufficient evidence in the record to support the District Court's con-

clusion that appellees could not receive a fair hearing from the Tribal Council and the Election Board and that the Tribal Council was the supreme judicial authority. 534 F.2d 98 at 101.

Implicit in the reasoning of the Court of Appeals was the doctrine that, absent unusual circumstances, exhaustion is the rule rather than the exception. *See also O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140, 1148 (8th Cir. 1973). No unusual circumstances have been shown to exist here. On this record, this Court can only conclude that Plaintiffs should be required to exhaust their tribal remedies before pursuing their action here.

Exhaustion is particularly appropriate in this case because of the fact that the issues raised by the 25 U.S.C. § 1302(8) allegations involve serious questions of the allocation of decision making power among the various entities involved in the Crow Creek Sioux Tribal government. Indeed, the questions presented may well fall within the area of non-justiciable political questions. Under these circumstances, this Court feels compelled to defer, at least initially, to the judgment of Tribal authorities.

The case of *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) seems analogous to the situation here. In *Coleman*, certain members of the Kansas Legislature sought, *inter alia*, to have Kansas' 1937 ratification of the proposed Child Labor Amendment to the United States Constitution, declared null and void on the grounds that Kansas had previously rejected the proposed amendment and that the amendment had lost its vitality since its 1924 proposal. The Supreme Court held that the issues posed by these contentions were non-justiciable political questions in that the resolution of these questions was committed to other branches of the federal government. The Court further relied on the need to attribute ". . . finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination . . ." 307 U.S. at 454–455, 59 S.Ct. at 982. The "political question" doctrine looms in this case be-

cause of the possibility that a decision in federal court for Plaintiffs may be interpreted by some as establishing a basis for attack on amendments ultimately and finally adopted by the Tribe. Further, there does appear to be a lack of satisfactory criteria for a judicial determination of how much time could properly be taken for the amendment process to function. The process of amending the Tribe's basic instrument of government should not be unduly hastened by federal courts, nor should it be extended through lack of diligence. This Court is unwilling without the assistance of the judgment of Tribal decision-makers, to expand its review of the amendment process beyond its finding that the Tribal Council has acted in good faith and with reasonable diligence under all of the circumstances, and the limited intrusion necessary for this finding is justified in this case only by the fact that the litigation concerning the Crow Creek Sioux Tribe's election processes has been somewhat protracted and Plaintiffs here had contended that a judicial order had been violated.

The following language of Mr. Justice Frankfurter, dissenting in *Baker v. Carr*, 369 U.S. 186 at 270, 82 S.Ct. 691 at 739, 7 L.Ed.2d 663 (1960), seems to fit the facts of this case:

> . . . there is not under our Constitution a judicial remedy for every political mischief, for every undesirable exercise of legislative power. The Framers carefully and with deliberate forethought refused so to enthrone the judiciary. In this situation, as in others of like nature, appeal for relief does not belong here. Appeal must be to an informed, civilly militant electorate. In a democratic society like ours, relief must come through an aroused popular conscience that sears the conscience of the people's representatives. In any event there is nothing judicially more unseemly nor more self-defeating than for this Court to make *in terrorem* pronouncements, to indulge in merely empty rhetoric, sounding a word of promise to the ear, sure to be disappointing to the hope.

However, as is usually the case in litigation concerning the Indian Civil Rights Act of 1968, legal concepts and doctrines evolved from the Constitutional law do not fit neatly into the area of Indian civil rights under Tribal governments. The political question doctrine as it has developed is primarily a function of the separation of the powers of the branches of federal government as derived from the United States Constitution. *See Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). The question of the parameters of the role the Federal Courts may ultimately play in relation to Tribal governments is incapable of any resolution. The somewhat narrower question of what effect the political question doctrine as it has developed will have on federal Indian Civil Rights Act litigation is likewise difficult to decide. In the judgment of this Court, however, it is clear that the separation of powers issues raised by this case can only be appropriately decided in the first instance by the Tribal Court.

In summary, this Court is of the opinion that exhaustion of Tribal remedies must be required before Plaintiffs may proceed in this Court on their claims under 25 U.S.C. § 1302(8).

Because of this Court's ruling on the due process claims, it does not reach the questions presented by the allegation that weighted voting on the Council is an improper remedy for malapportionment in this case since exhaustion of Tribal remedies is to be required for that claim as well. The following language from the Eighth Circuit Court of Appeals in *Daly* may, however, be noted here:

> Recognizing that there are practical difficulties associated with meeting the constitutional standards by either dividing the Reservation into equally-populated districts or electing the councilmen-at-large, we note that another permissible alternative would be a weighted voting plan under which each councilman would be accorded voting strength which would reflect the share of the population he represents. 483 F.2d 700 at 707.

The foregoing shall constitute this Court's findings of fact and conclusions of law.